**Ronald SOMMERS, Chapter 7 Trustee for Vicente R. Velasquez, Appellant,**

*v.*

**Emmanuel CONCEPCION, Individually and as Next Friend for Ronald Concepcion, a Minor, and Ronald Concepcion, Appellees.**

No. 14–98–00053–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 24, 2000.

Rehearing Overruled July 6, 2000.

George M. Bishop, H. Miles Cohn, Houston, for appellants.

L.T. Bradt, Corwin L. Teltschik, Houston, for appellees.

Panel consists of Justices YATES, FOWLER and LEE.*

## OPINION

### LESLIE BROCK YATES, Justice.

Ronald Sommers, trustee of the bankruptcy estate of Vicente Velasquez, appeals from an order granting summary judgment in favor of appellees and from an order denying appellant's motion to recuse. The Trustee brings six points of error. Because we find the trial court improperly assessed sanctions against the Trustee's counsel, we modify the order on the motion to recuse to delete these sanctions. As so modified, we affirm.

### Background

Vicente Velasquez is an attorney who represented Emmanuel Concepcion, individually and as next friend for his minor son, Ronald Concepcion, in a personal injury suit subject to a contingency fee contract signed in 1987. Under this contract, Velasquez was to receive a fee of forty percent of the amount recovered plus re-

imbursement of expenses advanced by him. In 1989, Emmanuel Concepcion entered into a contingency fee agreement with another attorney, Lloyd Lunsford. Before the case went to trial, the parties reached a settlement, with the minor child to receive $800,000 and his father to receive $162,500. The trial judge subsequently held a hearing on attorney's fees and approved the contingency fee contract and the fees requested by Velasquez pursuant to his contract with Concepcion.

Before the funds were distributed to Velasquez and Concepcion, Lloyd Lunsford, who claimed to represent Emmanuel Concepcion individually, filed a plea in intervention, as did Ken Harrison, who was employed by Velasquez in 1993 to assist in the Concepcion suit. The guardian ad litem for the minor, Corwin Teltschik, requested reconsideration of the court's approval of Velasquez's fees. The trial judge severed the attorney's fees issues into a separate cause to allow the judgment in the personal injury case to become final.

On September 29, 1993, Emmanuel Concepcion faxed a handwritten letter to Velasquez, terminating their relationship and demanding a release of Velasquez's interest in the case. Attorneys Lunsford, Harrison, and Teltschik were included in the certificate of service. The trial judge, Brady Elliott, conducted an expedited hearing the next day on the pleas in intervention. At this hearing, Concepcion was represented by yet another attorney, L.T. Bradt. Harrison, Lunsford, and Teltschik were present, but Velasquez was neither present nor represented by counsel.

During the hearing, the trial judge acknowledged that the hearing was being held in violation of the notice and time requirements of the rules of civil procedure. The trial judge asked the attorneys present to waive those requirements. In response to the trial judge's questions, the attorneys present indicated they were not aware of other parties to the suit.

---

* Senior Justice Norman Lee sitting by assignment.

The parties dictated a settlement into the record whereby attorney's fees would be divided among Harrison, Lunsford, Teltschik, and Bradt, and judgment was rendered in accordance with this agreement. The court stated that Velasquez was not a party because he had not asserted a claim in the severed case. The court admonished the Concepcions, however, that the settlement did not dispose of Velasquez's claims and the Concepcions acknowledged that Velasquez might have outstanding claims.

In May 1994,Velasquez filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Velasquez subsequently filed a lawsuit in federal court against the Concepcions to recover his fees, against Lunsford, Teltschik, and Harrison for interference with contract, and against Judge Elliott for violation of Velasquez's civil rights and for conspiracy. The claims against Judge Elliott were later dismissed. While the federal suit was pending, the bankruptcy proceeding was converted to a Chapter 7 proceeding and appellant, Ronald Sommers, was appointed trustee. The federal case was tried to a jury in November 1995 and the jury rendered a verdict in favor of the Trustee on all issues.[1]

In September 1995, while the federal lawsuit was pending, Velasquez brought a lawsuit in the 215th District Court against Teltschik, Lunsford, and the Concepcion family to recover fees. In this state court proceeding, Velasquez filed an affidavit of inability to pay costs and the defendants filed a contest to this affidavit. During the hearing on defendants' contest, the court found that Velasquez's affidavit of inability did not comply with Rule 145 and that it was false, frivolous and malicious. The court added that it "took judicial notice of the evidence previously adduced in this case and listened to the new evidence presented, examined the pleadings on file and listened to the argument of counsel." Based on this, the court found that Velasquez's action was "frivolous, malicious and vexatious." Accordingly, the court ordered the case dismissed with prejudice.[2]

The Trustee, who was not involved in the case filed in the 215th District Court, pursued an appeal of the judgment in the 268th District Court, which had ordered funds disbursed to the other attorneys without notice to Velasquez. The appeal was filed in this court and the panel found an abuse of discretion by the trial court in failing to recognize that Velasquez was a party to the judgment and entitled to notice of the hearing on attorney's fees. *Velasquez v. Lunsford,* No. 14–95–00172–CV, 1996 WL 544429 (Tex.App.-Houston [14th Dist.] 1996, no writ)(not designated for publication)(*Velasquez I* ).[3] Because the case dealt with a minor settlement, and other attorneys challenged Velasquez's entitlement to the entire amount of the attorney's fees, this court reversed the judgment and remanded the cause to the trial court "to determine the appropriate amount of attorney's fees to award to the various attorneys after an adversarial hearing on [the allegations of malfeasance by Velasquez]." *Id.*

On remand, the Trustee filed a first amended petition in intervention on March 17, 1997, claiming Velasquez's entitlement to recovery of the forty percent attorney's fees. On April 23, 1997, the Trustee filed a motion to require the redeposit and return of funds taken from the court registry. In this motion, the Trustee sought the return of funds paid to Lunsford and

---

1. Although Velasquez received a verdict in his favor in federal court, the federal court granted a new trial and abated the case pending the outcome of proceedings in state court.

2. Velasquez appealed this judgment, but a panel of this court dismissed the appeal for want of jurisdiction. *See Velasquez v. Telt-* *schik,* 932 S.W.2d 666 (Tex.App.-Houston [14th Dist.] 1996, writ denied).

3. We recognize that opinions not designated for publication may not be cited as authority. Tex.R.App. P. 47.7. Our citation and references to this opinion are merely to establish facts.

Harrison as attorney's fees. The trial court denied this motion. The case went to the jury and the jury found: (1) there was an agreement between Concepcion and Velasquez; (2) Concepcion failed to comply with that agreement; and (3) the reasonable value of Velasquez's legal services was $345,000. The jury also awarded attorney's fees to the Trustee.

The Concepcions filed a motion for judgment notwithstanding the verdict, or alternatively, a motion for new trial. The judge granted the motion for new trial. Thereafter, the Trustee filed a motion to recuse Judge Elliot. The motion was heard by Judge Joseph Ann Ottis. Judge Ottis denied the motion and assessed sanctions, in the amount of $2,400 against the Trustee's attorney, George Bishop.

On October 15, 1997, the Concepcions filed a motion for summary judgment, arguing that uncontroverted facts entitled the Concepcions to summary judgment. These facts included: (1) Velasquez's testimony that he would waive his fee if Lunsford was paid a fee; and (2) the dismissal with prejudice of Velasquez's prior state court suit to recover fees. The motion was granted.

On appeal, the Trustee raises six issues. Before addressing these issues, however, we must address a jurisdictional issue raised in a motion to dismiss.

**Finality of Court's Order**

Before submission of this case, the Concepcions filed a motion to dismiss and for damages, claiming the judgment was not final and appealable. Because the Concepcions contend this court is without jurisdiction over the appeal, they assert the appeal is frivolous and damages should be assessed against appellant. This motion was taken with the case. The Concepcions seek the same relief in a cross-point, asserted in their brief.

The Concepcions claim the summary judgment order is not final because it does not dispose of the Concepcions' counterclaims against Velasquez. The order granting summary judgment states that summary judgment is granted "against all of Plaintiff's claims and that Plaintiff have and take nothing by his claims against Emmanuel Concepcion herein." This order does not purport to render judgment on the Concepcions' counterclaim against appellant.

To be final and appealable, a summary judgment order must dispose of all parties and issues before the court. *See Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). If the order does not dispose of all parties and issues, it is interlocutory and not appealable absent a severance. *Id.* Although "take nothing" language may, under certain circumstances, render a summary judgment final, *see id.* at 592 & n. 1, the language in this judgment clearly disposes of the Trustee's claims against the Concepcions and nothing else. Therefore, the judgment appears to be interlocutory.

In his response to the motion to dismiss, the Trustee raises a number of reasons for denying the motion: (1) the pendency of the automatic stay renders the counterclaims void; (2) to the extent the counterclaim seeks recoupment or offset, those claims are moot in light of the judgment rendered in favor of the Concepcions; (3) the counterclaim concerning post-petition conduct, to which the automatic stay does not apply, is improperly pled and does not allege wrongful conduct by the Trustee.

Because Velasquez's bankruptcy proceeding is pending, both parties agree that an automatic stay is in effect. An automatic stay applies only to actions against the debtor. *See Sanchez v. Hester,* 911 S.W.2d 173, 176 (Tex.App.-Corpus Christi 1995, orig. proceeding). The commencement of a bankruptcy case stays:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been com-

menced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C.A. § 362(a)(1) (West 1993). If a party who has not sought relief from the bankruptcy stay attempts to commence or continue a lawsuit against a debtor, the action taken is void. *See Kalb v. Feuerstein,* 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *Howell v. Thompson,* 839 S.W.2d 92, 92 (Tex.1992); *Paine v. Sealy,* 956 S.W.2d 803, 805 (Tex.App.-Houston [14th Dist.] 1997, no writ). The Texas Supreme Court has held that an action taken in violation of the automatic stay is void, not merely voidable. *See Howell,* 839 S.W.2d at 92; *Continental Casing Corp. v. Samedan Oil Corp.,* 751 S.W.2d 499, 501 (Tex.1988). These cases do not, however, address the question whether counterclaims filed during the pendency of an automatic stay are void.

We have located no Texas case addressing the effect of an automatic stay on the allegation of counterclaims, but we have located federal case law addressing this issue. The federal cases almost entirely agree that any claim asserted against a debtor in bankruptcy without permission of the bankruptcy court is a violation of the automatic stay and is void. *See Maritime Electric Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1206 (3d Cir.1991); *Gullett v. Continental Cas. Co.,* 230 B.R. 321, 329–30 (Bkrtcy.S.D.Tex.1999); *In re Sansone,* 99 B.R. 981, 983–84 (Bkrtcy. C.D.Cal.1989). *But see In re Video Cassette Games, Inc.,* 108 B.R. 347 (Bkrtcy. N.D.Ga.1989) (holding that where debtor initiates piecemeal litigation by choosing to file complaint in district court rather than in bankruptcy court, debtor may not assert that defendant's counterclaims will prejudice the estate); *Bernstein v. IDT Corp.,* 76 B.R. 275 (S.D.N.Y.1987) (noting that it would be inequitable to deny a defendant assertion of a properly pleaded counterclaim where debtor uses automatic stay as a sword instead of a shield by instituting a lawsuit and then attempting to invoke the protection of the automatic stay on the counterclaim). We find persuasive those cases finding counterclaims void as a violation of the automatic stay.

In their first amended counterclaim, the Concepcions asserted claims of DTPA violations, breach of fiduciary duty, civil conspiracy, fraud, intentional infliction of mental anguish, negligence, racketeering, and spoliation of evidence. The Concepcions claimed damages including mental anguish, loss of wages, loss of use of money, loss of value of case, loss of money, including money paid to settle with Lloyd Lunsford and Ken Harrison, and loss of cause of action and its value. The Concepcions also sought punitive damages. The Concepcions further acknowledged that the automatic stay was still in effect, but alleged that the counterclaims regarding pre-petition conduct were asserted by way of recoupment and offset only.

■■■■ "Recoupment" allows a defendant to reduce the amount of a plaintiff's claims by asserting a counterclaim which arose out of the same transaction. *See Matter of Kosadnar,* 157 F.3d 1011, 1013 (5th Cir.1998). There are two general requirements for recoupment: (1) some type of overpayment must have been made, and (2) both the creditor's claim and the amount owed the debtor must arise from a single transaction. *See id.* Money recouped by creditors from an amount owed a debtor post-petition is not subject to the automatic stay because funds subject to recoupment are not considered the debtor's property. *See In re Malinowski,* 156 F.3d 131, 133 (2d Cir.1998). The typical recoupment situation involves a credit and debt arising out of a transaction for the same goods or services. *See id.*

■■■■ Even a broad reading of the pleadings does not reveal an allegation of an overpayment. Velasquez was not paid any fees, so there could not be an overpayment. The counterclaims for damages

against Velasquez arise from the same transaction out of which Velasquez's claim for payment arises, the representation of the Concepcions in the personal injury suit, but there is no allegation of a debt Velasquez owes to the Concepcions. Thus, the doctrine of recoupment is inapplicable to the counterclaims.

 The right of setoff allows entities that owe each other money to apply their debts to each other. *See id.* Where setoff is allowed, there are mutual debts arising from different transactions, which contrasts with the single transaction required in recoupment. *See id.* Here, there is no pleading of mutual debts, and therefore, setoff is inapplicable to the Concepcions' counterclaims. However, even if the setoff doctrine were applicable, it would not have precluded application of the automatic stay because setoff claims are subject to the automatic stay in bankruptcy. *See id.*

 Because the doctrine of recoupment is inapplicable to the counterclaims, the Concepcions were required to obtain permission from the bankruptcy court to assert claims against Velasquez. Because there is no showing the counterclaims were asserted with the permission of the bankruptcy court, the counterclaims were rendered void. Having found that the counterclaims are void, the trial court's judgment is final. Accordingly, we deny the Concepcions' motion to dismiss and for sanctions, as well as their cross-point requesting the same relief.

### Denial of Trustee's Motion to Require Redeposit and Return of Funds Taken from Court Registry

 The Trustee first contends the trial court violated a prior judgment of our court by denying the Trustee's motion to require return of funds paid to Lunsford

and Harrison. In this court's opinion of September 26, 1996, we stated that "the trial court has the discretion to determine the appropriate amount of attorney's fees to award to the various attorneys after an adversarial hearing on appellees' allegations of malfeasance." *Velasquez v. Lunsford,* No. 14–95–00172–CV, 1996 WL 544429 (Tex.App.-Houston [14th Dist.] 1996, no writ)(not designated for publication) *(Velasquez I ).*[4] Judgment was reversed and the cause was remanded to the trial court "for proceedings consistent with this opinion." *See id.*

Although the Trustee asserts that the Concepcions did not oppose the motion in the trial court, the Concepcions argue on appeal that Judge Elliott properly ruled he could not grant the motion and require non-parties to perform any act. The Concepcions further assert that the Trustee misunderstands the import of our court's opinion. The Concepcions contend our opinion did not set aside the settlement with Lunsford and Harrison or the fees paid to L.T. Bradt.

We first address the arguments concerning our holding in *Velasquez I.* In the trial court, Lunsford and Harrison were intervenors, seeking recovery of fees. Because this court reversed the trial court's judgment awarding fees to the attorneys other than Velasquez, and remanded the cause for an evidentiary hearing, our opinion and judgment in *Velasquez I* was intended to return the parties to their status before the hearing awarding fees. That being the case, there was no longer a trial court judgment approving the settlement as it concerned the fees of Lunsford and Harrison. Thus, Lunsford and Harrrison were returned to their status as intervenors.

We disagree with the Concepcions' assertion that the judge could deny Velasquez's motion to require redeposit of funds

4. Although generally an unpublished opinion may not be cited as authority, we may take judicial notice of our own unpublished opinion from the prior appeal in this case because it contains the law of the case. *See Sledge v.* *Mullin,* 927 S.W.2d 89, 93 (Tex.App.-Fort Worth 1996, no writ); *ITC Cellular, Inc. v. Morris,* 909 S.W.2d 182 (Tex.App.-Texarkana 1995, no writ); *Lake v. Lake,* 899 S.W.2d 737, 739 n. 3 (Tex.App.—Dallas 1995, no writ).

on the ground that Lunsford and Harrison were not parties. Because they had contracts regarding fees for services performed in the Concepcion case, our ruling in *Velasquez I* was applicable to Lunsford and Harrison. We found that Velasquez was a party, even though he had not filed a petition in intervention, because he had an equitable interest in the settlement funds. Once we reversed the judgment, there was no judgment approving Lunsford and Harrison's fees and they were returned to the same position as Velasquez, with an equitable interest in the settlement funds. Thus, Lunsford and Harrison were interested parties.

 Neither side has provided any case authority regarding the repayment of funds into the court's registry, and we have located only one case providing some guidance. In *Northshore Bank v. Commercial Credit Corp.*, 668 S.W.2d 787 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.), a panel of this court addressed the withdrawal of interpleaded funds. In *Northshore*, funds were withdrawn from the registry of the court and the judgment dividing the interpleaded funds was not superseded pending appeal. *Id.* at 790. This court observed that funds deposited in the trial court's registry are subject to the trial court's control and the court has the equitable power to make such orders as it deems necessary to protect those funds. *Id.* This court further found that, upon reversal of the judgment, the trial court could have ordered the withdrawn funds returned to the registry of the court, but if this were not done, the court had the authority to enter judgment that appellee recover the funds, still under the control of the court, from the party who was at the time wrongfully withholding them. *Id.*

 Based on this language in *Northshore Bank*, we find that the decision whether to order return of funds is discre-

tionary and does not affect the court's power to enter a judgment awarding funds to the proper party. Even though the court did not require Lunsford and Harrison to re-deposit the fees awarded to them, the court had the power to enter judgment that Velasquez recover funds from Lunsford and Harrison. Accordingly, appellant has not shown an abuse of discretion by the trial court in denying the Trustee's motion to require return of the funds.

## Grant of New Trial

The Trustee next claims the trial court erred in granting a new trial. The Trustee claims the grant of a new trial is reviewable on appeal and cites *Wu v. Walnut Equip. Leasing Co.*, 909 S.W.2d 273 (Tex. App.-Houston [14th Dist.] 1995), *rev'd*, 920 S.W.2d 285 (Tex.1996) for that proposition. However, *Wu* was reversed by the supreme court, and it involved a challenge to the *denial* of a new trial, not to the grant of a new trial.[5] *Id.* at 279. Thus, it provides no support for the Trustee's argument.

 The case law is very clear on this issue. If a motion for new trial was timely filed and granted during the trial court's period of plenary power, the grant is not subject to review either by direct appeal from that order or from a final judgment rendered after further proceedings in the trial court. *See Cummins v. Paisan Const. Co.*, 682 S.W.2d 235, 235 (Tex.1984); *Gee v. Lewisville Memorial Hosp., Inc.*, 849 S.W.2d 458, 461 (Tex.App.-Fort Worth 1993, writ denied).

## Grant of Summary Judgment in Favor of The Concepcions

The Concepcions' motion for summary judgment was based on judicial admissions and res judicata. They asserted the fol-

---

5. A panel of this court held in *Wu* that the trial court erred in denying the motion for new trial. *See* 909 S.W.2d at 281. The supreme court reversed, finding that our court had no jurisdiction to entertain the appeal because the motion for new trial was not timely filed. *See* 920 S.W.2d at 286.

lowing uncontroverted facts entitled them to summary judgment: (1) Velasquez's statement to Emmanuel that Velasquez would waive his fee if Lunsford was paid a fee; and (2) the dismissal with prejudice of Velasquez's prior state court suit to recover fees. The Trustee claims the trial court erred in granting summary judgment on either ground. We turn first to the ground of res judicata.

While Velasquez's bankruptcy was pending and before a trustee was appointed, Velasquez filed suit in federal court to recover his fees. Velasquez subsequently brought suit in the 215th District Court, also seeking recovery of fees. In this proceeding, Velasquez filed an affidavit of indigency and the Concepcions filed a contest, claiming that the affidavit was frivolous and seeking dismissal under TEX. CIV. PRAC. & REM.CODE ANN. § 13.001 (Vernon Supp.2000).[6]

The final judgment from the 215th District Court first notes that the affidavit of inability is false, frivolous and malicious. The judgment then states that the court took judicial notice of previously adduced evidence, listened to new evidence, examined the pleadings, and listened to arguments of counsel. Based on this, the court found Velasquez's action "frivolous, malicious and vexatious" and dismissed the case with prejudice. The court expressly noted the judgment was final, "disposing of all issues in this case and all relief not expressly granted is denied." The trial judge stated on the record that the ruling was based on the collateral estoppel and res judicata effect of the prior judgment in federal court.[7]

■■■ A trial court should grant summary judgment if the defendant disproves at least one essential element of the plain-

tiff's causes of action, or if the defendant establishes all elements of an affirmative defense as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). The Concepcions, as movants, had to establish all elements of the affirmative defense of res judicata as a matter of law. In determining whether the Concepcions met this burden, we must take as true all evidence favorable to the Trustee, resolving all doubts and indulging all reasonable inferences in favor of the Trustee. *See id.*

■■■ Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). To establish application of res judicata, a party must show the following elements:

(1) a prior final judgment on the merits by a court of competent jurisdiction;

(2) identity of parties or those in privity with them; and

(3) a second action based on the same claims as were raised or could have been raised in the first action.

*Id.* When a case is dismissed with prejudice, a subsequent suit is barred by res judicata. *Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 n. 2 (Tex.1990); *Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App.-Houston [14th Dist.] 1992, writ denied).

### 1. Identity of Parties or Privity

■■■ The Trustee first argues that res judicata does not apply here because he is not bound by the disposition of lawsuits brought by Velasquez.[8] The Trustee

---

6. Section 13.001 allows a judge to dismiss an action in which an affidavit of inability to pay has been filed on a finding that either the allegation of poverty is false or the action is frivolous or malicious. TEX. CIV. PRAC. & REM. CODE ANN. § 13.001(a) (Vernon Supp.2000)

7. The verdict and judgment in the federal lawsuit, which was in favor of Velasquez, was overturned when the federal judge granted a new trial and then abated for the disposition of the state claims.

8. The Trustee argues that our court previously rejected the Concepcions' argument regard-

asserts that, after his appointment by the bankruptcy court, he was the proper party to prosecute claims, but the Concepcions failed to join the Trustee in the proceeding in the 215th District Court. The Trustee further asserts he is not in privity with Velasquez.

In *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex.1999), the supreme court held that, once a bankruptcy petition is filed, all legal or equitable interests of the debtor become part of that estate and the bankruptcy trustee is the representative of the estate. Once a claim belongs to the estate, the trustee has exclusive standing to assert the claim. *See id.* We find *Douglas* distinguishable.

In *Douglas*, the trustee assumed control of the debtor's claims and sold them. *See id.* at 881. The party who bought these claims then moved to dismiss them. *See id.* The trial court granted the motion to dismiss over the debtor's objection. *See id.* The debtor tried to appeal the dismissal, but the supreme court ruled that the debtor had no standing and dismissed the debtor's claims. *See id.* at 882. Although *Douglas* establishes that a trustee has standing to assume control of a debtor's claims, it does not address the situation presented here, where, the Trustee had the opportunity, but did not assume control of the debtor's claims in the 215th District Court.

The Trustee also cites *In re Nevada Natural, Inc.*, 92 B.R. 934 (Bkrtcy.N.D.Ok. 1988) for the proposition that an individual debtor has no standing to bring a lawsuit on behalf of the bankruptcy estate or to bind the trustee, and therefore res judicata will not bar a subsequent suit by the Trustee. In *Nevada Natural,* a default judgment was entered awarding damages against the debtor. *See id.* at 935. After the bankruptcy petition was filed, the trustee filed suit to determine the nature, extent, and validity of the claims asserted by the parties who had obtained damages. *See id.* These parties argued the prior default judgment barred the trustee's suit under the doctrine of res judicata. *See id.* The court disagreed, finding that res judicata could not bind the trustee who was not a formal party to the prior suit and was not in privity with the parties to the prior suit. *See id.* at 936–37.

Despite the authority cited by the Trustee, the Concepcions argue that the Trustee is bound by Velasquez's prior judgment of dismissal, citing *Meyer v. Fleming*, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946) and *Chicago, R.I. & P. Ry. Co. v. Schendel*, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926).[9] In *Meyer,* the court confronted the issue whether litigation instituted by a creditor could be defeated on the ground that the creditor filed for bankruptcy. 327 U.S. at 165, 66 S.Ct. 382. The court first observed that, when a petition for bankruptcy is filed, title to the bankrupt debtor's claim vests in the trustee and the trustee may assume control of the litigation by intervening and obtaining any benefits recovered, or the trustee may start a new suit and cause the prior suit to be abated. *See id.* The court also noted that

ing res judicata when we denied a motion to dismiss the first appeal on the basis of the judgment of the 215th District Court. The Trustee claims this is now the law of the case. We disagree. We may only dismiss an appeal in accordance with an agreement of the parties, or for the following three reasons: (1) for want of jurisdiction; (2) for want of prosecution; or (3) because the appellant failed to comply with a requirement of the appellate rules, a court order, or a notice from the clerk requiring a response or other action within a specified time. Tex.R.App. P. 42.1(a), 42.3. Accordingly, a motion to dismiss based on res

judicata does not set forth a proper ground for dismissal.

9. *Schendel* does not concern bankruptcy law, but addresses the question whether the administrator of a deceased's estate is bound by a prior judgment in favor of the surviving widow. The court held that, because both actions presented and adjudicated the right of the widow to recover under the Iowa worker's compensation law, there was identity of parties for application of res judicata. 270 U.S. at 617–18, 46 S.Ct. 420.

a trustee may simply let the suit that has already started run its course. *See id.* In a footnote, the court mentioned that if a suit is continued by the bankrupt, the trustee is concluded by the judgment. *See id.* n. 8. The court was not, however, addressing the issue whether a trustee is bound by a judgment in a suit brought by the debtor and thus, the statement in the footnote is merely dicta. As authority for this statement, however, the Supreme Court cites to *Eyster v. Gaff,* 91 U.S. 521, 23 L.Ed. 403 (1875).

In *Eyster,* the debtor contended that proceedings in a foreclosure suit after the appointment of an assignee in bankruptcy were void because the assignee was not made a defendant. *See id.* at 522. The court disagreed, finding that the assignee could have had himself substituted for the bankrupt, or made a defendant. *See id.* at 524. Because he did not, the court held that the state court had jurisdiction to adjudicate the rights of the parties and the judgment was not void. *See id.* at 524–25.

Although we agree that the trustee represents the creditors, and therefore, should have the opportunity to intervene in a lawsuit involving the debtor, the Supreme Court's view of this issue is that a trustee is concluded by a judgment if the trustee has the opportunity, but chooses not to intervene in the lawsuit. *See Eyster,* 91 U.S. at 524–525. Although the Trustee in this case could have intervened in the suit in the 215th District Court, he chose not to do so. The Trustee claims he received no notice, was not joined, and was not served with papers filed in the lawsuit. The record, however, shows that the Trustee was aware of the state court suits filed by Velasquez. Indeed, the Trustee filed a document in federal court in 1995 indicating his awareness of the state court lawsuits. Having notice of the pendency of these state court actions, the Trustee could have intervened in the suit in the 215th District Court, but he chose not to do so. We disagree with the Trustee's argument that he is not bound because the Concepcions or the other attorneys did not notify the Trustee of any particular hearings or proceedings. Had the Trustee intervened in the suit, he would have received notices. Accordingly, we hold that the Trustee is bound by the judgment of dismissal with prejudice rendered by the 215th District Court.

### 2. *Prior Final Judgment on the Merits*

■ The Trustee next argues that, despite the ruling dismissing Velasquez's suit with prejudice, the ruling is not on the merits. The Trustee cites *Morris v. Collins,* 881 S.W.2d 138 (Tex.App.-Houston [1st Dist.] 1994, writ denied), for the proposition that a dismissal under TEX. CIV. PRAC. & REM.CODE ANN. § 13.001 is not a ruling on the merits. In *Morris,* an inmate sought an injunction. 881 S.W.2d at 139. The trial court denied the application for writ of injunction, making five findings, including a finding that the action was frivolous under section 13.001. *See id.* Although the appellate court did not need to reach the finding under section 13.001, and therefore the court's statements about this finding are mere dicta, the court did state in a footnote that section 13.001 "only allows a trial court to dismiss a suit for being frivolous, not to rule on the merits." *See id.*

■ Although a dismissal is generally not a ruling on the merits, we must disagree with the statement in *Morris.* A dismissal with prejudice *is* a ruling on the merits to the extent that further assertion of the plaintiff's claims is precluded by the doctrine of res judicata. *See Matthews Const. Co.,* 796 S.W.2d at 694.

■ The Trustee also claims the dismissal with prejudice in the 215th District Court was improper and, thus, cannot support preclusion of the claims in this proceeding. In response to the motions for summary judgment, the Trustee offered copies of the contests to Velasquez's affidavit of inability and of the defendants' joint brief to the 215th District Court on res

judicata and collateral estoppel. These materials, relating to the judgment rendered in the 215th District Court, are of no assistance to the Trustee in this cause.

Any alleged error in the judgment from the 215th District Court should have been appealed. Indeed, Velasquez attempted to appeal the judgment from the 215th District Court, but he failed to perfect that appeal in a timely manner. *See Velasquez v. Teltschik*, 932 S.W.2d 666, 667 (Tex. App.-Houston [14th Dist.] 1996, writ denied). Accordingly, the appeal was dismissed and the judgment in the 215th District Court became a final adjudication for purposes of the application of res judicata. *Cf. Ayre v. J.D. Bucky Allshouse, P.C.*, 942 S.W.2d 24, 28 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (except for purposes of determining appealability, a final adjudication generally occurs after the last appeal or when the appellate process terminates). The Trustee may not now attempt to collaterally attack that judgment by claiming it was improper and that it cannot support application of res judicata in this proceeding.

As the supreme court stated in *Segrest v. Segrest* :

A final judgment settles not only issues actually litigated, but also any issues that could have been litigated. That the judgment may have been wrong or premised on a legal principle subsequently overruled does not affect application of *res judicata.*

649 S.W.2d 610, 612 (Tex.1983).

▇ Accordingly, the dismissal with prejudice in the 215th District Court of Velasquez's claims to recover his attorney's fees precludes the Trustee's claims for those same fees in this proceeding. *See Matthews Const. Co.*, 796 S.W.2d at 694. The trial court properly granted summary judgment in favor of the Concepcions based on res judicata. Having found that the summary judgment may be upheld on the ground of res judicata, we need not address the Trustee's challenge to the summary judgment based on the alternative ground of judicial admissions.

## Denial of Motion to Recuse and Grant of Sanctions

The Trustee next claims the court erred in denying the Trustee's motion to recuse Judge Elliott. The Trustee also complains the court erred in sustaining an objection during the recusal hearing to testimony regarding comments made by Judge Elliott to an attorney in the Fort Bend County Attorney's office. Finally, the Trustee claims the court erred in granting sanctions against the Trustee's counsel.

### 1. Recusal Motion

▇ Under Rule 18b, a judge shall be recused in any proceeding in which:

(a) his impartiality might reasonably be questioned;

(b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(c) he or a lawyer with whom he previously practiced law has been a material witness concerning it. . . .

TEX.R. CIV. P. 18b(2).

The Trustee alleged that Judge Elliott's impartiality might reasonably be questioned based on the following: (1) the judge's improper rulings; and (2) the naming of the judge as a defendant in another lawsuit. The Trustee also claims the judge should be recused because he was called as a witness in a disciplinary proceeding concerning Velasquez and the judge has personal knowledge of disputed evidentiary facts in connection with the disciplinary proceedings.

The Trustee first points to Judge Elliott's willingness to conduct hearings and disburse settlement proceeds without notice to Velasquez and without affording him an opportunity to be heard. Judge Elliot knew, when he approved the settlement agreement, disbursing settlement

monies, that there was a party not in attendance at the hearing who might have a claim to the funds being disbursed. The trial judge advised the Concepcions during the hearing that the settlement did not dispose of Velasquez's claims. Upon learning of the disbursement of settlement funds, Velasquez sought a restraining order to stop payment of the funds disbursed or to require redeposit of funds in the registry of the court. The trial court denied this request. Velasquez also filed a motion for new trial, claiming the disbursement of funds was error because Velasquez was not notified of the hearing, was not in attendance at the hearing, and had a pending, unadjudicated claim for a portion of the funds. This motion was overruled.

■■■ An order denying a motion to recuse is reviewed for an abuse of discretion. *See* Tex.R. Civ. P. 18a(f). Where a party challenges a denial of a recusal motion based on alleged bias or impartiality, the party must show that this bias arose from an extrajudicial source and not from actions during the pendency of the trial court proceedings, unless these actions during proceedings indicate a high degree of favoritism or antagonism that renders fair judgment impossible. *See Ludlow v. DeBerry,* 959 S.W.2d 265, 271 (Tex.App.-Houston [14th Dist.] 1997, no writ)(citing *Liteky v. U.S.,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)); *Grider v. Boston Co., Inc.,* 773 S.W.2d 338, 346 (Tex. App.-Dallas 1989, writ denied). A party's remedy for unfair rulings is to assign error regarding the adverse rulings. *See Grider,* 773 S.W.2d at 346.

The disbursement of funds without notice to Velasquez, the denial of the restraining order, and the failure to grant the new trial are all actions that occurred while proceedings in the case were pending and do not arise from an extrajudicial source. The trial court's actions constituted error, but Velasquez sought appeal and obtained a judgment in his favor. *See Velasquez v. Lunsford,* No. 14-95-00172-CV, 1996 WL 544429, (Tex.App.-Houston [14th Dist.] 1996, no writ)(not designated for publication). There is no showing that the judge's rulings on remand indicate such a high degree of antagonism that fair judgment was impossible.

■■■ The Trustee also points to the testimony of an attorney representing the Trustee who had spoken to an attorney with the Fort Bend County Attorney's office. During this discussion, the county attorney told the Trustee's attorney that Judge Elliott told the county attorney to do nothing to help Mr. Velasquez. The Concepcions' counsel objected to this testimony on the ground it was hearsay and Judge Ottis sustained the objection. The Trustee argues this testimony is not hearsay because it is an admission of Judge Elliott, who was the subject of the recusal proceeding. The Trustee further asserts this testimony is not hearsay because it was introduced, not for the truth of the matter asserted, but to show the mental disposition of the judge.

■■■ The admission or exclusion of evidence is a matter within the trial court's discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753(Tex.1995). To obtain reversal on a claimed error in the exclusion of evidence, an appellant must show the court's ruling was erroneous and that the error probably caused rendition of an improper judgment. Tex. R.App. P. 44.1. Reversible error generally does not occur in connection with rulings on questions of evidence, unless the appellant can demonstrate the whole case turns on the particular evidence excluded. *See Shenandoah Assoc. v. J & K Properties, Inc.,* 741 S.W.2d 470, 490 (Tex.App.-Dallas 1987, writ denied).

Even if it were error to exclude the evidence, the Trustee has not shown that the ruling as to recusal turned on this testimony. If Judge Elliott told a county attorney, who represented him in any suit or recusal proceeding, not to help the judge's opponent, this statement, standing alone, does not establish that the judge

would not be capable of impartiality in the underlying suit.

■■■■ The Trustee further asserts it is reasonable to assume the judge's attitude was affected when Velasquez, after failing to obtain a hearing in Judge Elliott's court, filed a suit in federal court naming Judge Elliot as a defendant. Judge Elliott was immediately dismissed as a defendant, but the Trustee argues that recusal is still appropriate. Rule 18b requires a judge to recuse himself when he participates as a material witness, but in this case, the judge was merely named as a defendant and later dismissed from the suit. Therefore, recusal would have to be based on a finding of bias or prejudice arising from the naming of the judge as a defendant. The Trustee has not, however, shown a connection between the naming of the judge as a defendant and the judge's rulings. All the Trustee offers is an assumption that the naming of the judge as a defendant caused the judge to be prejudiced against Velasquez. A mere assumption that the judge is prejudiced is insufficient to establish an abuse of discretion in the refusal to grant a motion to recuse. Furthermore, we must consider such allegations very carefully. Allowing recusal in every situation where a party decides to sue the judge, or threatens to call the judge as a witness, would result in unwarranted recusal and provide an easy means of recusing a judge. *See U.S. v. Edwards,* 39 F.Supp.2d 692, 706 (M.D.La.1999). Because the Trustee has not established that the judge in this case was unable to rule impartially after being named as a defendant in another proceeding, we find no abuse of discretion in the denial of the motion to recuse on this basis.

■■■ The Trustee also complains that Judge Elliot should have been recused because he was called as a witness in a disciplinary proceeding and has personal knowledge of a disputed evidentiary fact. The Concepcions complained in the court below that Velasquez altered the final judgment in the underlying personal injury case by changing the designation over his name from "approved as to form and substance" to "approved as to form only." As a ground for denying Velasquez the fees he sought in this case, the Concepcions claimed the alteration of this prior judgment violated criminal statutes and that this action should result in fee forfeiture. Judge Elliot was subpoenaed by Velasquez to give a deposition on this issue in State Bar disciplinary proceedings. In his deposition, when asked by Velasquez if he was familiar with allegations of judgment tampering, the judge responded, "I'm familiar that you altered an instrument that I had signed, yes."

Rule 18b(c) requires a judge to recuse himself in any proceeding in which he is called as a material witness. Tex.R. Civ. P. 18b(c). Here, the judge was not called as a material witness in this proceeding. Instead, Velasquez called the judge as a witness in another proceeding, a disciplinary proceeding. We do not believe recusal is required under these circumstances.

When a judge is called as a witness in a case in which he or she is presiding, there is an appearance of impropriety as well as the danger of a loss of impartiality:

> A judge may assume the witness chair like anyone else, but he does not so easily lay aside robe and gavel. His testimony ... may appear to be more than mere opinion and may be mistaken for a judicial pronouncement.
>
> . . . .
>
> Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. That is, the relationship that develops between a judge and the lawyer who cross-examines him may influence the judge's conduct or judgment in other cases in which the attorney must appear before the judge.
>
> . . . .
>
> Not only are jurors likely to be influenced in their decision by the testimony

of a judge on one party's behalf, they will see a judge appearing to take sides. The entrance of a judge into the litigation arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality. *Joachim v. Chambers,* 815 S.W.2d 234, 237–39 (Tex.1991). The concerns raised in *Joachim* are not present in this case because Judge Elliott testified, not in this case, but in a separate proceeding. Thus, we do not believe recusal was required under these circumstances unless the judge bore such antagonism against Velasquez that fair judgment was impossible.

In connection with the argument that the judge was a material witness, the Trustee also claims recusal is required because the judge had personal knowledge of disputed evidentiary facts. The Concepcions contend that recusal was not required because the judge's knowledge did not arise from an extrajudicial source. The Texas cases discussing the extrajudicial source rule concern allegations of bias or partiality, rather than allegations of personal knowledge of disputed facts. *See, e.g., Grider,* 773 S.W.2d at 346. Although we have not located any Texas cases applying the extrajudicial source rule where the ground for recusal is personal knowledge of disputed facts, other jurisdictions have done so.[10] Many of these cases distinguish between knowledge that is "personal" or gained extrajudicially, and knowledge that is gained during case proceedings. The United States Supreme Court disagrees with the simple categorization of bias as "personal," which is offensive, and official, which is not. *See Liteky,* 510 U.S. at 549, 114 S.Ct. 1147. The court explained:

> Bias and prejudice seem to us not divided into the "personal" kind, which is offensive, and the official kind, which is perfectly all right. As generally used, these are pejorative terms, describing dispositions that are never appropriate. It is common to speak of "personal bias" or "personal prejudice" without meaning the adjective to do anything except emphasize the idiosyncratic nature of bias and prejudice, and certainly without implying that there is some other "nonpersonal," benign category of those mental states. In a similar vein, one speaks of an individual's "personal preference," without implying that he could also have a "nonpersonal preference." Secondly, interpreting the term "personal" to create a complete dichotomy between court acquired and extrinsically acquired bias produces results so intolerable as to be absurd. Imagine, for example, a lengthy trial in which the presiding judge for the first time learns of an obscure religious sect, and acquires a passionate hatred for all its adherents. This would be "official" rather than "personal" bias, and would provide no basis for the judge's recusing himself.

*Id.* at 549–50, 114 S.Ct. 1147.

■■■ Rather than focusing on the word "personal," the court asserted that em-

---

10. *See U.S. v. Kelley,* 712 F.2d 884 (1st Cir. 1983) (personal knowledge of disputed facts must be extrajudicial, meaning it must be obtained from sources outside the judge's participation in the case); *U.S. v. Phillips,* 664 F.2d 971 (5th Cir.1981)(same); *Craven v. U.S.,* 22 F.2d 605 (1st Cir.1927) (knowledge gained in a judicial setting or acquired from evidence presented in the course of proceedings before him does not qualify as "personal" knowledge); *State v. Rameau,* 685 A.2d 761 (Me. 1996) (only knowledge gained from an extrajudicial source supports a motion for recusal); *Scott v. State,* 110 Md.App. 464, 677 A.2d 1078 (Md.Ct.Spec.App.1996) (only knowledge derived from an extrajudicial source is "personal"); *Harris v. State,* 947 S.W.2d 156 (Tenn.Crim.App.1996) (noting the distinction between a judge's knowledge obtained by virtue of his position in an earlier, related proceeding and the knowledge obtained outside the courtroom and finding that recusal is only required when the knowledge or prejudice stems from an extrajudicial source and not from what the judge learned from participation in the case); *In re T.L.S.,* 144 Vt. 536, 481 A.2d 1037 (1984) (finding no bias based on personal knowledge of disputed facts where the knowledge was gained from the judge's participation in earlier proceedings in the same case).

phasis must be on the words "bias" or "prejudice" because these words "connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess, ... or because it is excessive in degree...." *Id.* at 550, 114 S.Ct. 1147. Although a judge may be exceedingly ill-disposed towards a party after gaining knowledge of facts during the proceedings, the judge is not thereby recusable for bias or prejudice since the knowledge was acquired in the course of proceedings. *See id.* at 550–51, 114 S.Ct. 1147. Although recusal based on bias or prejudice generally involves bias arising from an extrajudicial source, an unfavorable disposition towards a party arising from events occurring during judicial proceedings may nonetheless support recusal if "it is so extreme as to display a clear inability to render fair judgment." *See id.* at 552, 114 S.Ct. 1147.

■ We believe this reasoning is applicable to allegations of personal knowledge of disputed facts. Where a party alleges the judge possesses personal knowledge of disputed facts, the party must show that this knowledge either was wrongfully obtained or led to a wrongful disposition of the case. Any knowledge of judgment tampering in this case is knowledge the judge gained during proceedings in this case and is not knowledge the judge wrongfully possessed or obtained. Instead, the Trustee argues that this knowledge colored the judge's opinion of Velasquez and caused the judge to rule adversely on Velasquez's claims. The Trustee has not, however, proven this assertion.

In *Scott v. State,* 110 Md.App. 464, 677 A.2d 1078 (Md.Ct.Spec.App.1996), the court found the assertion of bias, prejudice, or knowledge was proven. The trial judge in that case, exhibited a hostile attitude toward the defendant from the moment the judge learned the defendant had lied to him. 677 A.2d at 1089. During the course of several hearings, the judge made statements, such as the following examples, indicating his excessive hostility: (1) "You can step forward because if you feel like your goose is about to get cooked, you are on the right track, and I would suggest that if you step forward that you remain silent until asked to be spoken to;" (2) "I can tell you that I feel rather strongly about people who come in here and lie, eyeball to eyeball with me, such as the guy sitting next to you staring at me as if he feels that he is a tough guy;" (3) I think it is fairly well known in the legal community that I try to be reasonable and try to be fair and try to settle cases and that sort of thing, but if there is one thing that I will follow somebody until hell freezes over is if that person lies to me. Then I will pursue it like an avenging angel, and that is what is going on right now." *Id.* at 1089–90.

In this case, there is no showing either that being called as a witness in the disciplinary proceedings or having knowledge of the alleged judgment tampering unfairly influenced the judge's rulings. Although the trial judge ruled adversely to Velasquez on a number of occasions, we cannot say that such adverse rulings necessarily indicate a deep-seated favoritism that made fair judgment impossible. Because we do not find that the judge's rulings display a predisposition or favoritism that prevented him from ruling fairly and impartially, we hold that the Trustee has not established an abuse of discretion in the refusal to recuse Judge Elliott.

### 2. Sanctions

■ Finally, the Trustee claims the trial court erred in granting sanctions against the Trustee's counsel. According to the Trustee, this sanction was based on TEX.R. CIV. P. 18a(h), which allows the assessment of sanctions against the moving party or his counsel if it is determined "at the hearing and on motion of the opposite party, that the motion to recuse is brought solely for the purpose of delay and without sufficient cause." As the rule

states, sanctions are available if it is determined that the motion to recuse was without sufficient cause *and* was brought solely for the purpose of delay. *See* Tex.R. Civ. P. 18a(h) (emphasis added).

Counsel for the Concepcions sought sanctions against Velasquez and the Trustee on both of these grounds, but only presented argument concerning the lack of sufficient cause for the motion. The recusal motion was filed in August 1997, after the motion for summary judgment was filed by the Concepcions, but several months before the summary judgment hearing was held. Because the recusal motion was filed well in advance of the hearing on the motion for summary judgment, it did not result in delay of that proceeding. Thus, the Concepcions have not established one of the two grounds required for assessment of sanctions. *See* Tex.R. Civ. P. 18a(h). Case law applying Rule 18a(h) indicates that there must be some showing of unexplained delay in the filing of the recusal motion. For example, in *Enterprise–Laredo Assocs. v. Hachar's, Inc.,* 839 S.W.2d 822 (Tex.App.-San Antonio 1992), *writ denied,* 843 S.W.2d 476 (Tex.1992)(per curiam), the court upheld the imposition of sanctions because the defendants were aware of grounds for possible recusal of the trial judge long before the motion was filed. Similarly, in *Palais Royal, Inc. v. Partida,* 916 S.W.2d 650 (Tex.App.-Corpus Christ 1996, orig. proceeding), the court upheld the award of sanctions because the movant for recusal of an assigned judge filed its motion less than ten days before the hearing, even though the movant had notice of the assignment fourteen days before the hearing.

Although some of the grounds urged in the recusal motion may have been insupportable or irrelevant, there were grounds raised that were at least arguable, such as the argument that the trial judge had personal knowledge of disputed evidentiary facts. Furthermore, the motion was filed after the trial judge had refused to render judgment on a verdict in favor of Velas-

quez, had granted a new trial, and was preparing to consider a motion for summary judgment filed by the Concepcions. Because the Trustee asserted at least one arguable ground for recusal and there was no showing the motion was brought solely for delay, we hold that the trial court erred in assessing sanctions against the Trustee's counsel under Rule 18a(h).

### Conclusion

Having found that the judgment was final and appealable, we deny the Concepcions' motion to dismiss and for sanctions. We also find the trial court improperly assessed sanctions against the Trustee's counsel under Rule 18a(h). Lastly, we find that the trial court properly granted summary judgment on the ground of res judicata. Accordingly, we modify the order on the motion to recuse to delete the sanctions assessed against the Trustee's counsel. As so modified, we affirm the trial court's judgment.