**Affirmed and Opinion Filed June 6, 2023**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-01322-CV

## IN THE INTEREST OF B.M.B. AND K.A.B., CHILDREN

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-11-11126**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Nowell
Opinion by Justice Pedersen, III

In this accelerated appeal involving termination of parental rights, appellant complains in his first issue that two judges abused their discretion by denying two separate motions to recuse the trial judge.[1] Appellant argues in his second issue that the trial court abused its discretion by awarding attorney's fees to appellee in the final judgment.[2] We affirm the judgment.

---

[1] *See* TEX. R. APP. P. 28.1(a), 28.4 (addressing accelerated appeal in parental termination cases).

[2] Appellant's sole complaint concerning the final judgment is its provision that he pay attorney's fees to appellee. Appellant fails to challenge the final judgment's termination of his parent-child relationship with B.M.B. and K.A.B. He does not challenge the jury's finding by clear and convincing evidence that he engaged in conduct which endangers the emotional well-being of the children. Nor does he challenge the jury's finding by clear and convincing evidence that termination of the parent-child relationship would be in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001((b)(1)(E) (providing the court may

## BACKGROUND[3]

Appellant and appellee were divorced in proceedings in the 301st District Court, Dallas County, in 2012. They had two minor children, B.M.B. and K.A.B., when the subsequent orders and judgment challenged in this appeal were signed. Appellant was the children's father and appellee their mother.

The parties have litigated numerous post-divorce issues in the trial court and in this Court. In 2014, the 301st District Court, Dallas County, rendered an "order in suit to modify parent-child relationship." That order addressed possession of and access to the children and also addressed the school district the children would attend.

In 2016, appellee filed a "petition to modify parent-child relationship" in the 301st District Court. Appellant filed a competing motion. The case was transferred to the 302nd District Court, Dallas County. After trial to the court, Judge Jackson signed a memorandum ruling, dated May 20, 2020.

---

order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has engaged in conduct . . . which endangers the physical or emotional well-being of the child).

[3] Documents related to this proceeding are subject to a sealing order. *See, e.g., Kartsotis v. Bloch*, 503 S.W.3d 506, 510 (Tex. App.—Dallas 2016, pet. denied). We issue public opinions explaining our decisions based on the record. *See* TEX. R. APP. P. 47.1, 47.3 (all opinions are open to the public and must be made available to public reporting services); TEX. GOV'T CODE ANN. § 552.022(a)(12) ("final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases" are "public information"). We preserve confidentiality of sealed information and avoid references to sealed information as much as possible in light of the parties' arguments. *See Masterguard, L.P. v. ECO Techs. Int'l LLC*, 441 S.W.3d 367, 371 (Tex. App.—Dallas 2013, no pet.).

On June 2, 2020, appellant filed a twenty-nine page "respondent's verified motion to recuse" Judge Jackson. Appellant attached twenty-five exhibits to the motion. Appellant alleged in the motion's "preliminary statement":

> The Court should grant *Respondent's Verified Motion to Recuse* and recuse from further involvement with this matter the Honorable Sandra Jackson. As fully set forth below, this Motion is brought under Tex. R. Civ. P. 18b, and recusal is requested due to lack of impartiality toward Father, bias against Father, disparate treatment of Father and Mother regarding hearings and interpretation of rulings, continued hindrance of Father's appellate rights, and prejudice against Father and in favor of Mother. Specifically, the knowingly disparate denial of Father's possession at a hearing on *Father's Application for Ex Parte Temporary Restraining Order* on May 29, 2020, showed an obvious lack of partiality (sic) and was Father's last straw in giving the Court opportunities to act in an impartial and fair matter.

On July 10, 2020, Judge Levario, a senior retired judge sitting by assignment, denied appellant's motion to recuse Judge Jackson. Judge Levario's order stated, in full:

> On June 2, 2020, Respondent filed a Verified Motion to Recuse the Honorable Sandra Jackson.
>
> Rule 18a(a)(3) of the Texas Rules of Civil Procedure, states that a Motion to Recuse must not be based solely on the judge's rulings in the case.
>
> After a review of Respondent's Motion, the court finds that Respondent's Motion is based solely on the judge's rulings in the case.
>
> THEREFORE, IT IS ORDRED that Respondent's Motion to Recuse is DENIED without hearing.

On September 18, 2020, Judge Jackson signed an "order vacating final modification order of September 16, 2020, and, entry of amended final modification order." The order recited it was "the final judgment in this case."

On September 25, 2020, appellant filed a "petition to modify parent-child relationship and application for temporary restraining order." In it, appellant sought to modify the September 18, 2020 "amended final order in suit for modification." On October 9, 2020, appellee filed her "counter petition to modify parent-child relationship."

Meanwhile, on October 6, 2020, Judge Jackson signed an order of recusal. The presiding judge of the First Administrative Judicial Region signed an order, dated October 7, 2020, transferring the cases to the 303rd District Court of Dallas County, Judge Garcia presiding.

On November 9, 2020, Associate Judge Olvera signed orders concerning visitation and related matters.

On November 11, 2020, Judge Garcia signed an order in which she voluntarily recused herself from service in the case. On November 12, 2020, the presiding judge of the First Administrative Judicial Region ordered the case transferred to the 330th District Court of Dallas County, Judge Plumlee presiding.

Also on November 12, 2020, appellant and appellee filed separate requests for a de novo hearing of Associate Judge Olvera's November 9, 2022 report. The

–4–

requests for de novo hearing were filed in the 303rd District Court—Judge Garcia's court.

On November 13, 2020—before Judge Plumlee could take any action in the case—appellant's counsel sent an email to the presiding judge of the First Administrative Judicial Region. That email stated, in part:

> We learned late yesterday that you had issued an order transferring Cause Number 11-1126 to the 330th District Court following Judge Garcia's unexpected voluntary recusal. . . .
>
> Unfortunately, this case has brought notoriety at the Dallas Courthouse, along with a great deal of behind-the-scenes gossip. One of the more prevalent issues in the rumor mill also has to do with a party with whom Judge Plumlee shares a special relationship going back many years. This personal and professional relationship will undoubtedly cause Judge Plumlee consternation either way, as it is the announced intention of Mother to seek this person's reinstatement into this case. This complication is coming strategically at the time that our window of opportunity is closing, such as you saw by the recent actions of Judge Garcia having the case for a couple of weeks before recusing herself.
>
> Because of this unique circumstance, and because the 330th District Court has taken no action in the case whatsoever and amending the transfer order would be nothing more than ministerial act at this point, we ask that you amend your transfer order Monday for the [appellant's] matter to be transferred to one of the Collin County District Courts, or alternatively another District Court in Dallas.

The presiding judge of the administrative region did not transfer the case from Judge Plumlee's court.

Consequently, Judge Plumlee presided over the de novo hearing on December 15, 2020. She signed an order after the de novo hearing on December 17, 2020. The

order after de novo review vacated Associate Judge Olvero's ruling of November 9, 2020, and denied appellant's requested relief.

Appellant filed his verified motion to recuse Judge Plumlee on December 17, 2020— about one month after the case was transferred to Judge Plumlee's court and on the day of Judge Plumlee's order after de novo review. On December 22, 2020, Judge Plumlee declined to recuse herself and requested the presiding judge of the administrative region to assign a judge to hear the motion to recuse. Judge Ginsberg was assigned to decide the recusal motion. He heard the motion to recuse Judge Plumlee on January 12, 2021. He signed an order denying the motion to recuse and denying appellee's motion for sanctions related to the recusal proceedings on January 15, 2021.

Subsequently, Judge Plumlee signed two orders relevant here. These orders included a July 26, 2021 order on appellant's requested relief. That order denied appellant's request for extended summer possession and suspended his visitation. An August 17, 2021 interim order clarified matters related to appellee's rights concerning the children's education. The interim order also ordered injunctive relief against appellant related to the children's education.

On November 12, 2021, appellee filed a "first amended counter-petition to modify parent-child relationship and to terminate [appellant's] parental rights." The counter-petition sought termination of appellant's parental rights of B.M.B. and K.A.B.

On August 12, 2022—one month before trial was scheduled to begin—appellant filed his second motion to recuse Judge Plumlee. Judge Pruitt, who was assigned to decide the recusal motion, presided over a hearing on August 29, 2022. He denied the motion to recuse and ordered appellant and counsel to pay appellee $2,500 in attorney's and paralegal's fees. The order provided counsel was jointly and severally liable for payment of the fees.

Jury trial began September 12, 2022. After a five-day trial, Judge Plumlee signed a judgment, dated November 22, 2022, terminating appellant's parent-child relationship with B.M.B. and K.A.B. Judge Plumlee decided the issue of attorney's fees pursuant to agreement. The judgment awarded appellee reasonable and necessary attorney's fees of $565,867.50.[4]

This accelerated appeal followed. *See* TEX. R. APP. P. 28.1(a), 28.4.

## APPELLANT'S ISSUES

Appellant brings two issues on appeal. They are:

1. Did the failure to recuse Judge Plumlee result in an effective denial of due process which ultimately culminated in the termination of [appellant's] parental rights?

2. Did the trial court abuse its discretion in ordering [appellant] to pay [appellee's] attorney's fees?

---

[4] Appellee sought $777,150.40 in reasonable and necessary attorney's fees.

Appellant sought $2,684,948.00 in reasonable and necessary attorney's fees.

–7–

## APPELLANT'S MOTIONS TO RECUSE JUDGE PLUMLEE

## Law And Standard Of Review

We review an order denying a motion to recuse for an abuse of discretion. *See* TEX. R. CIV. P. 18a(j)(1)(A); *Vickery v. Vickery*, 999 S.W.2d 342, 349 (Tex. 1999) (op. on reh'g); *Drake v. Walker*, 529 S.W.3d 516, 528 (Tex. App.—Dallas 2017, no pet.); *In re H.M.S.,* 349 S.W.3d 250, 253 (Tex. App.—Dallas 2011, pet. denied).[5] An abuse of discretion exists when a court's decision is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). The test for abuse of discretion is not whether in the opinion of the reviewing court the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles. *See E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). We will not reverse the ruling on the motion to recuse if it is within the zone of reasonable disagreement. *See Echols v. Gullege & Sons LLC*, No. 10-13-00419-CV, 2014 WL 4629056, at *5 (Tex. App.—Waco Sept. 11, 2014, pet. denied) (mem. op.).

---

[5] Appellant's notice of appeal concerning the orders denying recusal of Judge Plumlee states,

> [Appellant] appeals from the *Order on [Appellant's] Tertiary Motion to Recuse*, signed on August 31, 2022.

> [Appellant] appeals from the *Order on Motion to Recuse* signed on January 15, 2021.

Appellant complains about the orders denying his motions to recuse Judge Plumlee for numerous reasons. The issue before us is whether the assigned judges abused their discretion in denying the motions to recuse. *See supra*. Accordingly, we confine review of the orders denying recusal to appellant's argument that the assigned judges abused their discretion.

The movant bears the burden of proving recusal is warranted, and the burden is met only through a showing of bias or impartiality to such an extent that the movant was deprived of a fair trial. *See In re H.M.S.*, 349 S.W.3d at 253; *see also Pettigrew v. Cedar Springs Alexandre's Bar, L.P.,* No. 05-16-00269, 2018 WL 1580776, at *5 (Tex. App.—Dallas Apr. 2, 2018, no pet.) (mem. op.). The test for recusal is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial." *Hansen v. JP Morgan Chase Bank*, *N.A.,* 346 S.W.3d 769, 776 (Tex. App.—Dallas 2011, no pet.). Courts evaluate the merits of a motion to recuse from "a disinterested observer's point of view." *Ex Parte Ellis*, 275 S.W.3d 109, 116 (Tex. App.—Austin 2008, orig. proceeding).

The movant's burden to prove recusal is warranted "is only satisfied when the movant provides facts demonstrating the presence of bias or partiality 'of such nature and extent as to deny the movant due process of law.'" *Id.* at 117 (quoting *Off. of Pub. Util. Counsel v. PUC*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied)). Where a party challenges the denial of a recusal motion based on alleged bias or impartiality, the party must show that the bias arose from an extrajudicial source and not from actions during the pendency of the trial court proceedings unless the actions during proceedings indicate a high degree of favoritism or antagonism that renders fair judgment impossible. *See Parker v. Cain*, No. 07–17–00211-CV, 2018 WL 4997784, at *2 (Tex. App.—Amarillo, Oct. 15, 2018, pet. denied) (mem.

op.) (citing *Ludlow v. DeBerry*, 959 S.W.2d 265, 271 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Conclusory statements, conjecture, or mere assertions of bias will not satisfy the burden or overcome the presumption of impartiality. *See Ex parte Ellis*, 275 S.W.3d at 117.

Pursuant to Texas Rule of Civil Procedure 18a, a motion to recuse a judge "must not be based solely on the judge's rulings in the case" and "must assert one or more of the grounds listed in Rule 18b." TEX. R. CIV. P. 18a(a)(2), (3). Rule 18b provides in part that a judge must recuse in any proceeding in which (1) "the judge's impartiality might reasonably be questioned" or (2) "the judge has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b)(1), (2).

Bias by an adjudicator is not lightly established. *See In re City of Dallas*, 445 S.W.3d 456, 467 (Tex. App.—Dallas 2014, orig. proceeding). Judges enjoy a presumption of impartiality. *Ex parte Ellis,* 275 S.W.3d at 117. A party seeking recusal must satisfy a "high threshold' before a judge must be recused. *See id.* Judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality. *See Dow Chem. Co. v Francis*, 46 S.W.3d 237, 240 (Tex. 2001); *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555). Rather, it must be shown that they display a deep-seated favoritism or antagonism that would make fair judgment "impossible." *See Dow Chem. Co.*, 46 S.W.3d at 240. A party's remedy for unfair rulings is to assign error regarding the adverse rulings. *See In re*

–10–

*City of Dallas*, 445 S.W.3d at 467; *Sommers v. Concepcion*, 20 S.W.3d 27, 41 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

A judge's ordinary efforts at courtroom administration, even if stern or short-tempered, are immune. *See Dow Chem. Co.*, 46 S.W.3d at 240. Judicial remarks, even those that are critical or disapproving of—or even hostile to—parties or their cases, do not ordinarily support a bias or partiality challenge. *See Hansen,* 346 S.W.3d at 776.

### First Motion To Recuse Judge Plumlee

In his first issue, appellant argues that the first recusal judge, Judge Ginsberg, abused his discretion by denying appellant's first motion to recuse Judge Plumlee, filed December 17, 2022. He asserts, "Judge Plumlee demonstrated a deep–seated antagonism toward [appellant] and favoritism toward [appellee] in her demeanor, in her questions to [appellant's] expert witness, and in her comments to [appellant] and his counsel so as to make fair judgment impossible."

Judge Ginsberg's order on the first motion to recuse Judge Plumlee recites a hearing on the motion was held on January 12, 2021, and that a court reporter recorded the hearing. The appellate record contains no reporter's record of the January 12, 2021 hearing.[6]

---

[6] The clerk of this Court contacted the reporter of the trial court and inquired whether there exists a reporter's record of the January 12, 2021 hearing. The reporter replied she had no record of the hearing. We note the appellate record contains appellant's written request that the reporter's record of the hearing be included in the appellate record. We also note appellant's briefing on the first motion to recuse Judge

–11–

It is appellant's burden to present a record showing error requiring reversal, and when an appellant fails to bring forth a record, a presumption arises that the reporter's record would support the trial court's judgment. *See Rodriguez v. Aleskandrany*, No. 08-21-00128-CV, 2022 WL 3443643, at \*2 (Tex. App.—El Paso Aug. 17, 2022, no pet.) (mem. op.). This Court has held that when there is no reporter's record of a recusal hearing, we must presume that the trial court found all necessary facts to support the order. *See Minor v. Young*, No. 05-99-01579-CV, 2000 WL 1023788, at \*2 (Tex. App.—Dallas July 26, 2000, no pet.) (mem. op.) (rejecting argument that recusal judge abused his discretion in denying a motion to recuse the trial judge) (citing *El Chadiac v. Cramer*, 756 S.W.2d 325, 326 (Tex. App.—Dallas 1988, writ denied)).

Because Judge Ginsberg "conducted a hearing on the motion to recuse and our record does not contain a reporter's record from the hearing, we must presume that the evidence at the hearing supported the judge's ruling." *Minor*, 2000 WL 1023788, at \*2.

---

Plumlee cites to his motion to recuse and to other documents in the appellate record but not to a reporter's record of the hearing. In contrast, appellant's briefing on the second motion to recuse Judge Plumlee cites liberally to the reporter's record of the hearing before Judge Pruitt on the second motion. Appellant's brief leads us to conclude appellant knowingly briefed his argument concerning the first motion to recuse Judge Plumlee without the requisite reporter's record and nonetheless failed to supplement the appellate record with a copy of the reporter's record of the January 12, 2021 hearing, if one exists. *See* TEX. R. APP. P. 34.6(d) (if anything relevant is omitted from the reporter's record, any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items).

Accordingly, we apply this Court's precedent, *see id.*, and reject appellant's argument that Judge Ginsberg abused his discretion by denying appellant's first motion to recuse Judge Plumlee. *See id.*

## Second Motion To Recuse Judge Plumlee

In his first issue, appellant also argues the second recusal judge, Judge Pruitt, abused his discretion by denying appellant's second verified motion to recuse Judge Plumlee. Appellee filed a response. Judge Pruitt presided over a hearing on the motion and two days later denied the motion in a written order.[7]

### Judge Pruitt Did Not Abuse His Discretion: Waiver

Appellee argues Judge Pruitt did not abuse his discretion in denying appellant's second motion to recuse Judge Plumlee because the second motion was not timely filed and appellant's complaint was waived.

"A motion to recuse must be filed as soon as practicable after the movant knows of the ground stated in the motion . . . ." TEX. R. CIV. P. 18a(b)(1)(A). Complaints that concern recusal can be waived if the party seeking recusal fails to

---

[7] The order was captioned "Order on [appellant's] Tertiary Motion to Recuse." The motion was appellant's second motion to recuse Judge Plumlee, but it was the third motion to recuse appellant had filed in this case. His first motion to recuse, concerning Judge Jackson, was filed before his two motions to recuse Judge Plumlee and was denied. The civil practice and remedies code provides: "'Tertiary recusal motion' means a third or subsequent motion for recusal or disqualification filed against a district court or statutory county court judge by the same party in a case." TEX. CIV. PRAC. & REM. CODE ANN. § 30.016(a). "A judge hearing a tertiary recusal motion against another judge who denies the motion shall award reasonable and necessary attorney's fees and costs to the party opposing the motion. The party making the motion and the attorney for the party are jointly and severally liable for the award of fees and costs." *Id.* 30.016(c). Judge Pruitt's order provided appellant's attorney was jointly and severally liable for payment of appellee's attorney's fees.

file an appropriate motion within the time required by Texas Rule of Civil Procedure 18a(b)(1). *See Amrouni v. Bhakhrani*, No. 05-21-00278-CV, 2022 WL 3754539, at *4 (Tex. App.—Dallas Aug. 30, 2022, no pet.) (mem. op.) (citing *PS Royal Servs. Grp. LP v. Fisher*, No. 05-17–001139, 2019 WL 3543575, at *5 (Tex. App.—Dallas Aug. 5, 2019, pet. denied) (mem. op.) (motion to recuse waived as untimely due to nine-week delay)). We have held the procedural requirements for recusal are "mandatory" and filing an improper motion will waive the issue on appeal. *See id.* (citing *Vodicka v. A.H. Belo Corp.,* No. 05-17-00728-CV, 2018 WL 3301592, at *9 (Tex. App.—Dallas July 5, 2018, pet. denied) (mem. op.)).

Appellant filed his second motion to recuse Judge Plumlee on August 12, 2022. Appellant argues Judge Plumlee had previously demonstrated bias and prejudice in June 2021, July 2021, August 2021, November 2021, and later. Appellant argues Judge Plumlee sometimes evidenced multiple examples of bias or prejudice in a single hearing or order. These complained-of incidents occurred after Justice Ginsberg denied appellant's first motion to recuse Judge Plumlee.

Indeed, appellant argues, "*Throughout the entirety of this case*, Judge Plumlee's opinions and comments have demonstrated such a deep-seated favoritism toward [appellee] and antagonism against [appellant] which make her an advocate for [appellee], rather than an impartial jurist, and make fair judgment impossible." (Emphases added.) He similarly argues in reply that Judge Plumlee's "conduct

–14–

*throughout the case had been problematic, and likely justified recusal on its own . . . .*" (Emphasis added.)

Moreover, he argues, "Although *the Interim Order likely justified recusal on its own*, because Judge Plumlee represented that it was an interim ruling and [appellant] would have the opportunity to present additional evidence, [appellant] did not file a Motion for Recusal at that time and instead sought to modify the Interim Order." (Emphasis added.) Appellant's counsel testified before Judge Pruitt that appellant did not file the second motion to recuse Judge Plumlee promptly after the interim order "based upon the procedural posture of the case," that "[i]t was going to be a tertiary order," and that Judge Plumlee had made her comments "pronouncing her intentions, but she had not yet necessarily acted upon them."

Rule 18a(b)(1)(A) does not tolerate appellant's wait-and-see approach to filing his second motion to recuse Judge Plumlee. *See Parker v. Textron Fin. Corp.*, No. 04-12-00564-CV, 2013 WL 979208, at *2 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op.) (citing *Ex parte Ellis*, 275 S.W.3d at 123 (party possessing information potentially requiring recusal cannot sit on the information and wait and see how the court rules)).

Judge Plumlee signed the interim order to which appellant refers on August 17, 2001. Appellant filed his second motion to recuse Judge Plumlee almost a year after that on August 12, 2022. As noted, appellant also argues Judge Plumlee demonstrated bias and prejudice supporting recusal on several occasions—

sometimes multiple times on a single day—before entry of the interim order, which he concedes "likely justified recusal on its own."

In sum, appellant filed his second motion to recuse Judge Plumlee more than a year after alleged demonstrations of bias and prejudice in the interim order. And as noted, appellant argues that Judge Plumlee's bias and prejudice made fair trial "impossible" throughout "the entirety of this case," with numerous alleged occasions alleged to have occurred before entry of the interim judgment.

We note appellant waited to file the second motion to recuse Judge Plumlee until a month before trial. *See id.* (movant waived right to seek recusal when he delayed in filing the motion until subsequent rulings provided further evidentiary support for his recusal and filed motion approximately one month before bench trial was to commence, as appellee did here).

We reject appellant's remaining arguments that he timely filed the second motion to recuse Judge Plumlee. He argues he filed the motion more than ten days before trial, citing Texas Rule of Civil Procedure 18a(b)(1)(B). But that rule allows filing within ten days of trial when the movant neither knew nor reasonably should have known that (1) the judge whose recusal is sought would preside at the trial or hearing or (2) the ground stated in the motion existed. *See* TEX. R. CIV. P. 18a(b)(1)(B)(i), (ii). Judge Pruitt reasonably could have concluded that appellant knew or should have known of the alleged grounds for recusal more than a year before Rule 18a's ten-day period began. Moreover, appellant filed his second motion

–16–

to recuse Judge Plumlee a month before trial was scheduled to begin, well before Rule 18a(b)(1)(B)'s ten-day period.

Appellant argues Judge Pruitt concluded the motion was timely filed—otherwise, he would have denied it without holding an oral hearing. *See* TEX. R. CIV. P. 18(a)(g)(3)(A) ("motion to recuse that does not comply with this rule *may* be denied without an oral hearing.") (emphasis added). We interpret our rules of civil procedure using the same principles we apply when construing statutes. *See In re City of Dickinson*, 568 S.W.3d 642, 645-46 (Tex. 2019) (orig. proceeding); *In re Bridgestone Ams. Tire Operations, LLC*, 459 S.W.3d 565, 569 (Tex. 2015) (orig. proceeding); *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding). Our review is de novo, and our primary objective is to give effect to the drafter's intent as expressed in the rule's language. *In re City of Dickinson*, 568 S.W.3d at 645-46. We look first to the rule's language and construe it according to its plain meaning. *See id.*; *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2001); *In re Berry*, 578 S.W.3d 173,178 (Tex. App.—Corpus Christi-Edinberg 2019, orig. proceeding). The plain meaning of "may" is to "have permission to" or to "be free to." *May*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985). Accordingly, we do not interpret Texas Rule of Civil Procedure 18a(g)(3)(A) as requiring that a motion to recuse that does not comply with Rule 18(a) be decided without oral hearing. We reject appellant's argument that Judge Pruitt held the motion to recuse was timely filed simply because he held an oral

hearing on motion. *See Sapp v. Williams*, No. 07-97-0112-CV, 2007 WL 335568, at *2 (Tex. App.—Amarillo June 19, 1997, writ dism'd by agr.) (mem. op.) (it is not the function of an intermediate appellate court to rewrite the Texas Rules of Civil Procedure).

Judge Pruitt could have reasonably concluded appellant failed to file the second motion to recuse Judge Plumlee "as soon as practicable after the movant knows of the ground stated in the motion . . . ." TEX. R. CIV. P. 18(b)(1)(A).

Accordingly, we conclude Judge Pruitt did not abuse his discretion in denying appellant's second motion to recuse Judge Plumlee.

<u>Judge Pruitt Did Not Abuse His Discretion: The Merits</u>

But even if appellant had not waived his second motion to recuse Judge Plumlee, Judge Pruitt would not have abused his discretion by denying the motion on its merits. *See* TEX. R. CIV. P. 18a(j)(1)(A)("An order denying a motion to recuse may be reviewed only for abuse of discretion on appeal from the final judgment."); *Vickery* 999 S.W.2d at 349 (abuse of discretion); *Drake*, 529 S.W.3d at 528 (same); *In re H.M.S.,* 349 S.W.3d at 253 (same).

Appellant asserts Judge Plumlee's conduct warranted recusal for three main reasons. He argues Judge Plumlee (1) denied his due process rights; (2) considered extrajudicial sources of information; and (3) demonstrated such a deep-seated antagonism toward him and favoritism toward appellee so as to make fair judgment impossible.

–18–

Appellant argues, "Judge Plumlee repeatedly refused to rule on [appellant's] requested relief, both with regard to his possession and access and the issue of his residence, refused to modify her Interim Order in the face of uncontroverted evidence that [appellant] no longer resided in HPISD [Highland Park Independent School District], refused to conclude the evidence, and continued multiple hearings thus denying [appellant] the opportunity to be heard in a meaningful manner." *See* Tex. Const. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land"); *Mosely v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."). He argues that typically, notice of a hearing must be served on all parties not less than three days before the time specified for the hearing. *See* TEX. R. CIV. P. 21(b).

*A. Pre-judgment without hearing all the evidence*

Appellant argues that during a June 23, 2021 hearing he attempted to testify it was appellee's responsibility pursuant to the amended final order to enroll the children in school and to ensure their eligibility to attend. He asserts Judge Plumlee interrupted him, refused to allow him to testify or his counsel to argue that point, and refused to consider his argument. He relies on the following exchange:

Q. What you said to [child] was you should return it because you're never going to be a Belle, right?

A: That's not true. Mother controls the school, where they go to school. Even if I lived in Highland Park Mother still determines where they go to school. It's Mother's determination, not mine. . . .

THE COURT: I am going to tell you this because it's true, your statement is disingenuous at best, sir, and it's an absolute, outright non-truth. I'm reading the order, sir, and you are a learned man. This was your request based upon Judge Jackson's entry of this order that I can tell by reading the order. . . . But if [appellant] did not live in that school district, sir, you have to know unequivocally, sir, that you and your home was the residence which they relied upon, and to say something different, sir, calls into question for this Court at least, your credibility, just so you know that . . . .

Q. And which parent has the exclusive right to make decisions about the children's education?

A. [Appellee] does.

THE COURT: Okay. Hold on, because I want a clear record. I don't know—you're not trying this to a jury. You're trying it to a judge that is sitting here looking at this order who has specifically asked [appellant] who lived in Highland Park at the time this order was entered. It is him. So I asked him wasn't he being relied upon for this particular provision.

If [appellee] did not live in Highland Park then she made a decision when this order went into place. Because judges don't do this, Ms. Bowman, and you know that. Judge Jackson wouldn't have done it. Judge Plumlee wouldn't have done it. . . . There's no judge in their right mind that would have ordered this without it being probably a part of an agreement because it's—it's not doable.

So the fact that [appellant] has indicated that he, in fact, lived in Highland Park when the order went into place and [appellee] did not, simply means they had an agreement that the Court ratified and reduced to an order. Okay. You are not trying this to a jury. Please stop wasting my time.

Judge Plumlee explained her understanding of the amended final order. Judge Pruitt could reasonably have concluded Judge Plumlee's interpretation was not unreasonable or the product of bias or prejudice. *See Hansen,* 346 S.W.3d at 776 (the test for recusal is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial."); *In re Ellis*, 275 S.W.3d at 116 (courts evaluate the merits of a motion to recuse from "a disinterested observer's point of view."). Moreover, Appellant in fact testified that appellee controlled where the children went to school and that appellee had the exclusive right to make decisions about the children's education. Judge Pruitt could reasonably have concluded Judge Plumlee did not prevent appellant from testifying. He could have concluded appellant's argument that Judge Plumlee refused to consider his argument was conclusory, conjecture, or a mere assertion of bias. *See Ex parte Ellis*, 275 S.W.3d at 117. Moreover, he reasonably could have concluded Judge Plumlee did not demonstrate bias or prejudice or deep-seated antagonism that would make fair judgment impossible. *See H.M.S.*, 349 S.W.3d at 253.

Appellant complains Judge Plumlee characterized his decision to move his residence from Highland Park as "absolutely unforgiveable." Judge Plumlee stated:

> And I want you to know that even if we disagree, because reasonable people can disagree about the same set of circumstances, I want you to know that this court believes that to be just absolutely unforgivable. Okay. So stop wasting my time.

Do you have anything else?

Judge Pruitt could have reasonably concluded Judge Plumlee based her comment on evidence and the language of the final amended order and that she stated a standard of reasonableness rather than one of bias or prejudice. Moreover, opinions formed by a judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *See Hansen*, 346 S.W.3d at 776. Indeed, Judge Plumlee asked appellant if he had additional testimony to offer. He also notes Judge Plumlee said, "Please stop wasting my time." Judicial remarks during the course of a proceeding that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *See Id.* at 776. "A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administrations—remain immune." *Liteky*, 510 U.S. at 556. Judge Pruitt could have reasonably concluded Judge Plumlee's comments did not demonstrate (1) bias or prejudice, (2) that she decided the issue without hearing all the evidence, or (3) such a deep-seated animosity to make fair judgment "impossible."

Appellant argues, "Judge Plumlee also indicated during the June 23, 2021, hearing that she had already decided the issue of appellant's request to modify the

possession schedule without hearing any evidence, telling appellant's counsel, 'the Court can't get there on that issue [of additional visits].'" The record does not support appellant's characterization or argument. Judge Plumlee was hearing evidence—appellant's testimony—when she said from the bench:

> You're going to have problems getting there, because the children are—we've already discussed the children are going to be in a—need therapy. So I'm just telling you now the Court can't get there on that issue, but I'm listening to you, but just know that they've got to have—there has to be a therapeutic component to this and those children have to have that first. So go ahead.

Judge Plumlee heard testimony on the issue of possession before and after her comment. Judge Plumlee expressly allowed continued testimony, stating "go ahead." Judge Pruitt could reasonably have rejected appellant's assertion that Judge Plumlee—due to her comments above—decided Barnes' request to modify possession without hearing any evidence. Moreover, Judge Pruitt could reasonably have concluded Judge Plumlee presented a rational explanation concerning therapy based on past discussions rather than demonstrating evidence of bias or prejudice or a deep-seated antagonism or favoritism that made fair judgment impossible. And Judge Pruitt could have concluded appellant's argument that Judge Plumlee decided the issue of appellant's request to modify the possession schedule without hearing any evidence was conclusory, conjecture, or a mere assertion of bias. *See Ex parte Ellis*, 275 S.W.3d at 117.

Appellant argues Judge Plumlee decided issues prior to hearing all the evidence because proceedings concerning modification of his summer possession were continued twice. The trial court's "Order on Father's relief" includes a finding that after the continuances, "The Court still invited the parties to reset the matter so that each of the parties could be heard fully on the issue before the Court." Appellant notes he requested a ruling by submission after the continuances. Notably, appellant acknowledges Judge Plumlee entered an order on the continued matter after his request. Consequently, Judge Pruitt could reasonably have concluded appellant did not meet his heavy burden to demonstrate bias or prejudice or a deep-seated antagonism making fair judgment impossible. Moreover, a trial court has wide discretion in managing its docket. *See Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982). A complaint that a trial judge is not timely managing the docket in a reasonable time is remediable, when appropriate, by mandamus. *See, e.g., In re Robinson*, No. 05-22-00579-CV, 2022 WL 4306154, at *1 (Tex. App.—Dallas Sept. 23, 2022, orig. proceeding) (mem. op.). Additionally, a trial court's rulings rarely constitute a valid basis for a motion to recuse based on bias or partiality. *See Dow Chem. Co.*, 46 S.W.3d 237, 240; *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555 (1994)).

Appellant argues Judge Plumlee predetermined possession and access issues without having heard all the evidence. He argues that Judge Plumlee based her denial of his possession and access to the children on his "unforgivable decision" to relocate

–24–

from HPISD. First, we concluded above that Judge Pruitt did not abuse his discretion for denying the motion to recuse despite Judge Plumlee's use of the word "unforgivable." Second, appellant's argument is baseless. The July 26, 2021 order to which appellant cites does not contain a finding appellant relocated from HPISD. The order contains other findings that supported denial of appellant's motion for increased summer possession, stating,

> Based upon the evidence before the Court, there is clear and convincing evidence that any additional visits for the petitioner would endanger the emotional development of the children.
>
> There is clear and convincing evidence that the children need an appropriate therapeutic outlet untethered by litigation.
>
> There is clear and convincing evidence that continued visitation without appropriate therapeutic intervention would endanger the physical health and/or emotional development of the children.

Judge Pruitt could reasonably conclude the order denying possession or access was not based on appellant's change of residence, much less on bias, prejudice, or a deep-seated animosity making fair judgment impossible.

Similarly, appellant argues Judge Plumlee pre-determined issues without hearing all of the evidence because "although [appellant's] decision to move served as a basis for the order suspending his possession, [appellee's] Motion for Clarification related to that issue was not set to be heard until August 25, 2021." Judge Pruitt could reasonably have concluded the July 26, 2021 order denying possession or access was not based on appellant's change of residence, as addressed

above, and not on a basis of bias, prejudice, or a deep-seated animosity making fair judgment impossible.

*B. Hearings held in appellant's absence*

Appellant argues Justice Plumlee denied him due process related to August 2021 proceedings and an interim order concerning the location of his residency. Appellant argues Judge Plumlee held two hearings in his absence, in at least one case without sufficient notice. He complains of evidentiary matters that occurred during the hearings. He argues the order entered after the hearings resulted in a deprivation of due process. This Court, in a previous opinion, considered and rejected appellant's due process arguments. *See In re Barnes*, No. 05-21-00807-CV, 2022 WL 1702516 (Tex. App.—Dallas May 27, 2022, orig. proceeding) (mem. op.). In that previous case, appellant argued the family court clearly abused its discretion by denying him due process of law by conducting the August 2021 hearings when he was unavailable. This Court concluded appellant's due process argument had become moot because he appeared and presented evidence on the issue of his residence during a hearing on December 1, 2021. *Id.* Our previous opinion was Exhibit 49 in the recusal proceeding held by Judge Pruitt. Moreover, Judge Pruitt heard argument at the recusal hearing from appellant's counsel that Judge Plumlee "later gave [appellant] his day in court" on the issue of the location of appellant's residence. And Judge Plumlee signed an August 24, 2022 order that recited "the Court finds that the Armstrong address is no longer the residence of [appellant]"—

the holding appellant had sought to prove up in the August 2021 hearings. Judge Pruitt could reasonably have concluded appellant was not deprived of due process rights as a product of bias or prejudice or a deep-seated antagonism that made fair trial impossible. *See Clanton*, 639 S.W.2d at 931 (a trial court has wide discretion in managing its docket); *see also In re Robinson*, 2022 WL 4306154, at *1 (a complaint that a trial judge is not timely managing the docket in a reasonable time is remediable, when appropriate, by mandamus).

*Extrajudicial sources*

Appellant argues, "Judge Plumlee considered extrajudicial sources of information." He argues Judge Plumlee "repeatedly indicated that her rulings and opinions, including her critical, disapproving, and hostile statements regarding [appellant], were based on allegations that preceded the entry of the Amended Final Order, to which she was not the judge and in no position to judge the credibility of the witnesses or make findings of fact which were not otherwise made on the record." He cites to one judicial opinion in support of this argument, *Otto v. Otto*, 438 S.W.2d 587, 589 (Tex. App.—San Antonio 1969, no writ) ("Generally, proof of misconduct of a party prior to the rendition of the original judgment is not ordinarily *admissible* in a subsequent proceeding brought for change of custody of the children.") (emphasis added). Appellant concedes "Judge Plumlee could take judicial notice of the case file and record of prior proceedings . . . ."

Appellant refers to hearings and orders in his "extrajudicial information" argument. He asserts that at a June 23, 2021 hearing, "Judge Plumlee implied an agreement which never existed to justify Judge Jackson's order, support [appellee's] position, and question [appellant's] position." We decided, above, that Judge Pruitt could have reasonably concluded Judge Plumlee's interpretation of the amended final order—what appellant characterizes as "Judge Plumlee's impl[ying] an agreement which never existed"—was not the product of bias or prejudice. Nor did Judge Plumlee abuse his discretion by rejecting appellant's argument as a mere assertion of bias or prejudice. *See Ex parte Ellis*, 275 S.W.3d at 117.

Appellant argues Judge Plumlee judged his credibility at the June 23, 2021 hearing. The trial court in a non-jury proceeding, of course, is the *sole* judge of the credibility of witnesses and the weight to be given their testimony. *See In re Y.B.*, No. 05-21-00915-CV, 2023 WL 3451041, at *2 (Tex. App.—Dallas May 15, 2023, no pet. h.) (mem. op.). Judge Pruitt did not abuse his discretion in rejecting appellant's assertions of bias based on credibility. *See Ex parte Ellis*, 275 S.W.3d at 117.

He argues that at an August 16, 2021 hearing Judge Plumlee erroneously admitted hearsay emails and also referred to allegations raised in a prior modification proceeding over which she did not preside. Again, judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality. *See Dow Chem. Co.*, 46 S.W.3d at 240 (stating the ruling must be shown to display deep-

–28–

seated favoritism or antagonism that would make fair judgment impossible); *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555). A party's remedy for unfair rulings is to assign error regarding the adverse rulings. *See In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41. Appellant fails to demonstrate that an impartial person would have a reasonable doubt of whether admitting the evidence was due to partiality. *See Hansen,* 346 S.W.3d at 776 (the test for recusal is "whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial."). Judge Pruitt did not abuse his discretion in rejecting appellant's evidentiary argument.

Appellant argues that during the August 16 hearing Judge Plumlee "became irate and began to lecture him extensively" based on extrajudicial information. Assuming, without deciding, appellant's characterizations are accurate, a judge's comments that are critical or disapproving of—or even hostile to—parties or their cases, do not ordinarily support a bias or partiality challenge. *See Hansen,* 346 S.W.3d at 776. Judge Pruitt could have concluded an impartial person would not have reasonably doubted Judge Plumlee's impartiality due to her comments. *See id.*

Appellant argues Judge Plumlee "decided that [appellant] impersonated [another person] with absolutely no evidence to support such a position, instead relying on allegations made in a previous modification proceeding." In short, he complains of a ruling. For reasons stated above concerning evidentiary argument,

Judge Pruitt did not abuse his discretion. *See Dow Chem. Co.*, 46 S.W.3d at 240; *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555); *In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41; *Hansen,* 346 S.W.3d at 776.

Appellant's remaining assertions that Judge Plumlee considered "extrajudicial information" fail to argue or demonstrate why such consideration, if any, supports recusal or demonstrates that Judge Pruitt abused his discretion in rejecting these remaining arguments. Judge Pruitt did not abuse his discretion in rejecting these remaining arguments. *See Ex parte Ellis*, 275 S.W.3d at 117 (mere assertions, conjecture, or mere conclusory statements do not support recusal); *see also Dow Chem. Co.*, 46 S.W.3d at 240 (judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality); *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555).

### *Deep-seated antagonism and favoritism*

Appellant argues, "Judge Plumlee demonstrated such a deep-seated antagonism toward [appellant] and favoritism toward [appellee] as to make fair judgment *impossible*." (Emphasis added.) Appellant argues, "[he] also filed a judicial complaint against Judge Plumlee, further prejudicing her."

### A. *Judge Plumlee's Orders*

Initially, appellant makes arguments related to the December 15, 2020 de novo hearing. Judge Ginsberg considered matters related to that hearing in denying appellant's first motion to recuse Judge Plumlee. We decided those matters, above,

and held Judge Ginsberg did not abuse his discretion. We do not reconsider them here.

Appellant argues Judge Plumlee "weaponized the issue of therapy for the children" in order to forestall his visitation with the children. In support, he notes Judge Plumlee stated "the children needed therapy before visitation could resume." We decided above that Judge Pruitt could have concluded Judge Plumlee reasonably—without bias or prejudice—explained her position on the issue of therapy. Judge Pruitt could have decided Judge Plumlee did not indicate a deep-seated antagonism or favoritism that made fair judgment "impossible."

Appellant argues the order on father's requested relief removed his possession "with no basis to do so." Judge Pruitt presumably applied the law that Appellant's remedy was to assign the allegedly unfair order as error rather than to move for recusal. *See In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41; *see also Dow Chem. Co.*, 46 S.W.3d at 240 (judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality); *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555). Judge Pruitt also could have concluded that the ruling did not demonstrate fair judgment was impossible.

Appellant argues the order on appellant's requested relief is factually inaccurate "and/or" advocates against his interests. He argues a footnote in the order states, "Petitioner alleges at the close of evidence on March 19th this Court took this request under advisement. Nothing could be further from the truth." Counsel

testified at the hearing on recusal that the statement was inaccurate and that she was "dumbfounded." Counsel testified Judge Plumlee has made several statements that counsel characterizes as inaccurate. Appellant argues the footnote was "unnecessary." Justice Pruitt could reasonably have concluded appellant failed to demonstrate the alleged misstatement evidenced deep-seated antagonism or favoritism making fair judgment impossible.

Appellant complains the interim order impermissibly granted injunctive relief concerning his change of residence. He notes this Court partially and conditionally granted mandamus relief and that Judge Plumlee subsequently vacated the injunctions. *See In re Barnes*, 2022 WL 1702516, at *4. Judge Pruitt could have concluded appellant properly sought and obtained mandamus relief for the injunctions rather than seeking recusal. *See In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41; *and see Dow Chem. Co.*, 46 S.W.3d at 240 (judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality); *In re H.M.S.*, 349 S.W.3d at 253. Judge Pruitt did not abuse his discretion in deciding the interim order did not demonstrate a deep-seated antagonism or partiality that made fair judgment impossible. For these reasons, Judge Pruitt could also have concluded footnotes to the interim order failed to demonstrate deep-seated antagonism or favoritism that made fair judgment impossible. *See Hansen,* 346 S.W.3d at 776 (critical, disapproving, hostile comments made to parties or their cases do not ordinarily demonstrate bias or

partiality); *In re H.M.S.*, 349 S.W.3d at 254 (opinions formed by the judge based on facts introduced or events occurring in the course of proceedings do not constitute a valid basis for a recusal motion unless "they display a deep-seated favoritism or antagonism that would make a fair judgment impossible.").

B. *Judge Plumlee's Conduct*

Appellant argues "Judge Plumlee's conduct during hearings demonstrates deep-seated antagonism toward [appellant] and favoritism toward [appellee]."

Appellant argues that at a June 23, 2021 hearing Judge Plumlee unfairly excluded evidence favorable to his case but unfairly admitted evidence favorable to appellee's case. He asserts Judge Plumlee made "very unfriendly" and "belittling" statements about his laying an evidentiary predicate but "went out of her way" to lay an evidentiary predicate for appellee. After appellant's evidentiary objection, Judge Plumlee explained her ruling on appellee's evidence and stated the predicate had been established through previously given testimony. Consequently, Judge Pruitt would not have abused his discretion by disagreeing that Judge Plumlee went out of her way to lay the predicate for appellee. Moreover, appellant's remedy was to assign error rather than to move for recusal. *See In re City of Dallas*, 445 S.W.3d at 467; *Sommers*, 20 S.W.3d at 41; *see also Dow Chem. Co.*, 46 S.W.3d at 240 (judicial rulings alone almost never constitute a valid basis for a motion to recuse based on bias or partiality); *In re H.M.S.*, 349 S.W.3d at 253 (citing *Liteky*, 510 U.S. at 555)).

Judge Pruitt could have concluded these two evidentiary rulings did not indicate bias, prejudice, or deep-seated antagonism that made fair judgment impossible.

Appellant argues Judge Plumlee "argued" with and "lectured" appellant or his counsel and demonstrated a demeanor, facial expression, and tone of voice that was "very antagonistic" at the June 23, 2021 hearing. Judicial remarks, even those that are critical or disapproving of—or even hostile to—parties or their cases, do not ordinarily support a bias or partiality challenge. *See Hansen,* 346 S.W.3d at 776; *Drake v. Spriggs*, No. 13-03-429-CV, 2006 WL 3627716, at *5 (Tex. App.—Corpus Christi-Edinburg Dec. 14, 2006) (mem. op.) (judge's complained-of hostile demeanor did not demonstrate bias or partiality). "A judge's ordinary efforts at Courtroom administration—even a stern and short-tempered judge's ordinary efforts at Courtroom administration—remain immune." *Liteky*, 510 U.S. at 556; *Echols*, 2014 WL 469056, at *6 n.3. Judge Pruitt did not abuse his discretion by concluding appellant failed to meet his heavy burden to demonstrate Judge Plumlee demonstrated deep-seated antagonism or favoritism that made fair judgment impossible.

Appellant argues that during the June 23, 2021 hearing, Judge Plumlee objected to a form of a question "and lectured [appellant] and his counsel that the question misrepresented the Order After De Novo Review." Judge Plumlee commented on the contents of the order and stated, "Read your order. It is very clear." She based her statements on "[a] plain reading of the Court's order." Judge

Pruitt could have reasonably decided Judge Plumlee did not "lecture" appellant and his counsel but instead stated in reasonable, unbiased, impartial terms her understanding of the order, as addressed above. He also could have concluded the exchange did not evidence deep-seated antagonism or favoritism that made fair judgment impossible.

Appellant asserts that at the June 23, 2021 hearing, Judge Plumlee argued with appellant regarding the summer schedule under the amended final order. Appellant testified his relationship with the children during a previous summer possession was "fantastic." Judge Plumlee commented it could not have been fantastic because appellant asked for modified summer visitation. Judge Pruitt could have concluded Judge Plumlee's comment was accurate and that appellant nonetheless testified—twice—that his relationship during the previous summer was fantastic. He also could have concluded the exchange did not evidence deep-seated antagonism or favoritism that made fair judgment impossible.

Appellant also argues that during the June 23, 2021 hearing, Judge Plumlee argued and tried "to entrap him and manufacture a record to support her erroneous rulings and findings." He bases this allegation on the following exchange:

> THE COURT: Okay. And on a scale of 1 to 10 how important are the Belles [drill team] to [appellant's child], would you say?
>
> [APPELLANT]: Again, I haven't been around her very much in the last six months, but I would say it was a 10.

THE COURT: Okay, well I've been around [appellant's child] a whole lot less than you have, and I'm telling you I would put it—on a scale of 1 to 10, I would put it at 15. . . . Would you agree with that?

[APPELLANT]: You said 1 to 10, so I said 10.

Although not quoted by appellant, the exchange continued:

THE COURT: Oh, I know. But if you were excited about something I'm asking you would it be more than 10. Would it be—

[APPELLANT]: Yes. She's worked very hard for it. No doubt. Absolutely.

THE COURT: Okay. So she's worked for something, correct?

[APPELLANT]: Yes.

Judge Pruitt could have reasonably concluded the above exchange was not an attempt to "entrap" appellee and did not demonstrate bias or prejudice, much less a deep-seated antagonism or favoritism that makes fair judgment "impossible."

Appellant argues that during the June 23, 2021 hearing, Judge Plumlee interrupted his counsel "every time" she "was getting to a critical point." "A judge's ordinary efforts at Courtroom administration—even a stern and short-tempered judge's ordinary efforts at Courtroom administration—remain immune." *Liteky*, 510 U.S. at 556; *Echols*, 2014 WL 4629056, at *6 n.3. After reviewing the record, Judge Pruitt could have concluded appellant's counsel was not precluded from eliciting testimony and that appellant failed to meet the high burden of demonstrating deep-seated antagonism or favoritism making fair judgment impossible.

Appellant asserts arguments based on Judge Plumlee's demeanor and partial evidentiary rulings during the August 16, 2021 hearing similar to those he made about the June 23, 2021 hearing. We decided above that Judge Pruitt did not abuse his discretion in rejecting appellant's similar arguments concerning the June 23 hearings. For similar reasons, Judge Pruitt did not abuse his discretion in rejecting appellant's arguments concerning the August 16 hearing.

Appellant argues Judge Plumlee erroneously allowed the amicus attorney to inappropriately use exhibits and make improper closing arguments. We note appellant cites to the transcript of the trial on the merits. He complains of occurrences recorded in transcripts of proceedings held on September 15, 2022, and September 16, 2022. These dates are subsequent to the motion, hearing, and order related to appellant's second motion to recuse. These matters were not before Judge Pruitt, and he could not have abused his discretion concerning these subsequent trial matters.

We do not address appellant's remaining repetitive arguments or his mere assertions, conclusory statements, or conjecture. *See Ex parte Ellis*, 275 S.W.3d at 117 (conclusory statements, conjecture, or mere assertions of bias will not satisfy the burden or overcome the presumption of impartiality).

## C. The Judicial Complaint

Appellant briefly asserts, "[appellant] also filed a judicial complaint against Judge Plumlee, further prejudicing her." He does not demonstrate the complaint led to deep-seated antagonism that makes fair trial impossible or to bias or prejudice.

He fails to cite to a judicial opinion, statute, or rule providing that filing a judicial complaint against a judge is a ground for recusal. Appellee cites to *Cameron v. Greenhill*, 582 S.W.2d 775, 776 (Tex. 1979) ("To hold that merely naming a judge as a party would disqualify him would put power in the hands of litigants to frustrate our judicial system."). This Court has held recusal is not required simply because a party seeking to recuse a trial judge was a plaintiff in another pending lawsuit in which the trial judge was a defendant. *See Drake*, 529 S.W.3d at 528, 530 (quoting *Cameron*, 582 S.W.2d at 776). We conclude the considerations expressed in *Cameron* and *Drake* are relevant here in the context of a judicial complaint. Judge Pruitt could have reasonably concluded appellant has failed to carry his high burden to overcome the presumption of Judge Plumlee's impartiality and to demonstrate bias, prejudice, or animosity making fair trial impossible.

Judge Pruitt did not abuse his discretion in denying appellant's second motion to recuse Judge Plumlee on the merits.

. . .

We overrule appellant's first issue.[8]

---

[8] Appellant's notice of appeal states he desires to appeal from both orders denying recusal of Judge Plumlee and "from all portions of the judgment." Appellant fails to assign error to the final judgment terminating parental rights other than to challenge the award of attorney's fees.

Appellant brings an additional assertion ostensibly based on the orders denying the motions to recuse Judge Plumlee. He argues, "The erroneous denial of [appellant's] multiple requests for recusal culminated in the termination of [appellant's] parental rights." We have held the orders are not erroneous. His subordinate assertions include: (1) "Judge Plumlee's unsupported orders and inappropriate commentary were given undue weight and credibility"; (2) "Judge Plumlee's appointment of Dr. Robb and refusal to

## ATTORNEY'S FEES

In his second issue, appellant complains the trial court abused its discretion in ordering him to pay appellee's attorney's fees. The trial court's final judgment provides that appellee recover $565,876.50 from appellant for reasonable and necessary attorney's fees and post judgment interest. The parties agreed the trial court would determine the amount of attorney's fees.

Appellate courts review a trial court's award of attorney's fees under an abuse of discretion standard. *See Oliver v. Rowan*, No. 05-19-01433-CV, 2021 WL 2948554, at *12 (Tex. App.—Dallas June 29, 2021, no pet.) (mem. op.) (citing *Mohamed v. Ctr. for Sec. Policy*, 554 S.W.3d 767, 778 (Tex. App.—Dallas 2018, pet. denied)). A court abuses its discretion if it rules without reference to guiding rules or principles. *See id.*

Appellant and appellee submitted the question of attorney's fees based on affidavit or declaration with attachments of detailed invoices thereto. Three law firms—Morales Walker PLLC; Chad Ruback, Attorney at Law; and White & Wiggins, LLP—represented appellant in the proceeding below. Appellee's attorney,

---

remove him as the supervisor further alienated the children"; and (3) "Judge Plumlee's appointment of a confidential therapist after institutionally alienating the children from [appellant] ensured that her opinion was unfavorable to [appellant]." Appellant fails to explain the relevance of these assertions to the controlling questions of whether Judge Ginsberg or Judge Pruitt abused their discretion in denying motions to recuse Judge Plumlee. We see none. Our holding that neither judge abused his discretion pretermits consideration of appellant's additional assertion of alleged effects of Judge Plumlee's pretrial orders, commentary, or appointments. Accordingly, we do not consider or decide appellant's additional assertions.

Carlos Morales, averred he prepared his affidavit to offer his opinion as an expert witness on the issue of appellant's attorney's fees.[9] He averred reasonable and necessary attorney's fees were (1) $777,150.40 for his firm, (2) $136.026.00 for Chad Ruback's firm, and (3) $17,200.00 for Wiggins's firm. He averred to a total amount of reasonable and necessary attorney's fees and paralegal fees of $930,376.40. Three separate sets of invoices are attached to Morales's affidavit: one for services provided by Morales Walker PLLC, one for services provided by Chad Ruback, Attorney at Law, and one for services provided by White &Wiggins, LLP. Morales's affidavit averred to numerous matters concerning attorney's fees for each of the three firms that represented appellees, including the attorney's professional experience, the complexity of the case, the amount of the hourly rates, the reasonableness of the hourly rates, the reasonableness and necessity of the services rendered, and the reasonableness and necessity of the attorney's fees requested.

The final judgment awards attorney's fees to appellee in one lump sum without specifying amounts awarded separately to Morales Walker PLLC, Ruback, Attorney at Law, or Wiggins & White, LLP.

Appellant notes Ruback and Wiggins did not file their own separate affidavits with attached invoices in support of their own attorney's fees. He argues,

> The Affidavit of Carlos Morales attempted to authenticate the invoice
> of Chad Ruback, Attorney at law and White & Wiggins, LLP, in

---

[9] Appellant failed to object to Morales's qualifications as an expert witness or to offer testimony to controvert Morales's testimony.

addition to Morales Walker, PLLC, invoices. However, Morales is not a custodian of such records and this the invoices of Chad Ruback and White & Wiggins are inadmissible hearsay and do not constitute competent evidence sufficient to support an award of such fees to [appellee]. *See* TEX. R. EVID. 803(6) and 902(10).[10]

Appellant argues a party applying for an award of attorney's fees bears the burden of documenting the hours expended on the litigation and the value of those hours. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012) (an applicant for a

---

[10] Rule 803(6) provides:

The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(6) A record of an act, event, condition, opinion, or diagnosis if:

    (A) the record was made at or near the time by⸺or from information transmitted by⸺someone with knowledge;

    (B) the record was kept in the course of a regularly conducted business activity;

    (C) making the record was a regular practice of that activity;

    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or an unsworn affidavit that complies with Rule 9022(10); and

    (E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

TEX. R. EVID. 803(6).

Rule 902(10) provides, in part:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted: . . .

    (10) The original or a copy of a record that meets the requirements of 803(6) or (7), if the record is accompanied by an affidavit that complies with subparagraph (B) of this rule and any other requirements of law, and the record and affidavit are served in accordance with subparagraph (A). For good cause shown, the court may order that a business record be treated as presumptively authentic even if the proponent fails to comply with subparagraph (A).

TEX. R. EVID. 902(10).

fee under the lodestar method must provide sufficient details of the work, including documentation of services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required). He argues, "Without the invoices of Chad Ruback or White and Wiggins, the affidavit of Carlos Morales does not provide sufficient evidence regarding what services were performed, when they were performed, or how much time such work required to support an award of attorney's fees to [appellee]."

In response, appellee relies on this Court's precedent and Texas Rules of Evidence 703 and 705(a). *See* TEX. R. EVID. 703, 705. Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

TEX. R. EVID. 703. Rule 705(a) provides:

> If the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

TEX. R. EVID. 705(a).

Appellee cites to *Murco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 606 (Tex. App.—Dallas 1990, no writ). In *Murco Agency, Inc.*, this Court upheld an award of attorney's fees based on expert testimony. *Id.* The expert testimony in *Murco* relied

on an itemized legal bill that was not introduced in evidence. *Id.* The expert testified

the fees were fair and reasonable. *Id.* This Court noted no authority was cited that

required the bill itself be introduced into evidence and that we had not found such

authority. *See id.* Appellant argues *Murco Agency, Inc.* is inapplicable because, he

asserts, the expert in *Murco Agency, Inc.* provided specific testimony based on fee

statements. We find no such distinguishing testimony discussed in *Murco Agency,*

*Inc.* We reject appellant's sole argument that *Murco Agency, Inc.* is inapplicable.

Moreover, a sister court upheld a trial court's award of attorney's fees over an

objection to expert testimony concerning fees of a deceased attorney on grounds that

"[t]he prior lawyer fee statements are hearsay." *Tijerina v. Wyson*, No. 14-15-00188-

CV, 2017 WL 506779, at *7 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.)

(mem. op.). The Fourteenth Court of Appeals stated,

> [T]he trial court did not abuse its discretion by admitting the testimony.
> "[A]n expert can testify at trial in appropriate circumstances about
> hearsay evidence relied upon in forming an expert opinion if such
> evidence reasonably would be relied upon by experts in the field in
> forming opinions or inferences regarding the subject at issue." *Niche
> Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 574 (Tex. App.—
> Houston [14th Dist.] 2011, no pet.); *see* TEX. R. EVID. 703. Here, [the
> expert] reasonably relied upon invoices and billing statements from
> appellee's former attorney to form an opinion, and these documents
> would typically be relied on to determine the reasonableness of the fees
> charged. *See In re Marriage of Bivins*, 393 S.W.3d 893, 901 (Tex.
> App.—Waco 2012, pet. denied) (noting that an expert could rely upon
> invoices containing hearsay to form an opinion about whether the work
> invoiced was reasonable and necessary).

*Id.* Appellant asserts *Tijerina* is inapposite here for the same reasons he asserts *Murco Agency, Inc.* is inapposite. We have rejected that *Murco Agnecy, Inc.* is inapposite and reject appellant's related argument concerning *Tijerina*.

Appellant briefly argues the Morales affidavit is "insufficient" due to lack of specificity. The only judicial opinion cited in appellant's brief on attorney's fees is *In Apple I, LTD*, 370 S.W.3d at 761 ("A party applying for an award of attorney's fees bears the burden of documenting the hours expended on the litigation and the value of those hours."). Appellant argues that when applying for a fee under the lodestar method, the applicant must provide sufficient details of the work performed, including, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required. *See id.* The invoices attached to the Morales affidavit do exactly that. Notably, appellant fails to argue how, specifically, the Morales affidavit and attached invoices of Chad Ruback, Attorney at Law and White & Wiggins, LLP fail to satisfy the requirements of *El Apple I, LTD.* Attached to the Morales affidavit are 131 pages of detailed invoices of Morales Walker PLLC; Chad Ruback, Attorney at Law; and White & Wiggins, LLP. We reject appellant's brief and general argument that the attached invoices were "insufficient" pursuant to standards announced in *El Apple I, LTD.*

Appellant argues in reply that the Morales affidavit contains "generalities" concerning the experience of Ruback and Wiggins and the reasonableness of their

–44–

hourly rates. In reply, he cites *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496-97 (Tex. 2010) ("We have clearly held, however, that generalities *such as these* are not sufficient to support a fee-shifting award under the lodestar method, which applies in fee-shifting situations.") (emphasis added). *Id.* at 496. *Rohrmoos* referred to "generalities" in cases in which "some courts have decided that testimony about an attorney's experience, the total amount of fees, and the reasonableness of the fees complies sufficiently with *Arthur Andersen* to support an attorney's fee award." *Id.* The Morales affidavit and attachments do not present the generalities decried in *Rohrmoos*. As addressed above, Morales averred to specific information, and his affidavit had attached to it 131 pages of detailed invoices of Morales Walker, LLC; Chad Ruback, Attorney at Law; and White & Wiggins, LLP. Appellant's quoted language from *Rohrmoos* fails to support his argument.

We conclude the trial court did not abuse its discretion in awarding attorney's fees to appellant.

We overrule appellant's second issue.

## CONCLUSION

We overrule appellant's first issue and affirm the orders on both motions to recuse Judge Plumlee. We overrule appellant's second issue and affirm the trial court's judgment awarding attorney's fees.

221322f.p05

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID BARNES, Appellant

No. 05-22-01322-CV     V.

JENNIFER LANCASHIRE,
Appellee

On Appeal from the 330th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DF-11-11126.
Opinion delivered by Justice
Pedersen, III. Justices Reichek and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**; the January 15, 2021 order denying David Barnes's motion to recuse is **AFFIRMED**; and the August 31, 2022 order denying David Barnes's tertiary motion to recuse is **AFFIRMED**.

It is **ORDERED** that appellee Jennifer Lancashire recover her costs of this appeal from appellant David Barnes.

Judgment entered this 6th day of June, 2023.